# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2728

JEFFERY MARK OLSON, on behalf of himself
and a class of those similarly situated,

*Plaintiff-Appellant,*

v.

TRACY BROWN, in his official capacity as Sheriff
of Tippecanoe County,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 4:09-CV-00006—**Allen Sharp,** *Judge.*

ARGUED NOVEMBER 10, 2009—DECIDED FEBRUARY 4, 2010

Before POSNER and FLAUM, *Circuit Judges,* and DER-
YEGHIAYAN, *District Judge.**

FLAUM, *Circuit Judge.* A putative class of plaintiffs,
represented by Mark Olson, filed a complaint against

---

* Hon. Samuel Der-Yeghiayan, District Judge for the Northern
District of Illinois, is sitting by designation.

the Sheriff of Tippecanoe County, Tracy Brown, alleging several First Amendment violations and violations of Indiana law in the Tippecanoe County Jail. Olson filed for class certification at the same time he filed the complaint. Shortly after Olson filed the complaint and motion for class certification, the Indiana Department of Correction transferred him out of Tippecanoe County Jail. Because the transfer took place before class certification, the district court dismissed the suit as moot. Olson appeals the dismissal on the ground that this case is inherently transitory for any possible named plaintiff and therefore falls within the exception to the mootness doctrine announced in *Gerstein v. Pugh*, 420 U.S. 103 (1975). We find that this case fits within the exception to the mootness doctrine carved out for inherently transitory cases and therefore we reverse the district court's dismissal.

## I. Background

Tippecanoe County Jail ("TCJ") is a temporary detention center that houses inmates awaiting trial, release on bail, or transfer to the Indiana Department of Correction, or serving sentences of less that one year. The parties stipulate that the following statistics regarding the inmate population as of February 20, 2009 represent a typical portrait of the inmate population at any given time: TCJ housed 529 inmates; 128 inmates had been incarcerated for less than 30 days; 119 inmates had been incarcerated between 30 and 90 days; 130 inmates had been incarcerated between 90 and 180 days; 121 inmates

had been incarcerated between 180 and 365 days; 41 inmates had been incarcerated for more than 365 days; and the average length of stay for the 529 inmates was 139 days. Coincidentally, Olson was incarcerated at TCJ for exactly 139 days—from August 29, 2008 through January 15, 2009.

TCJ employs a grievance policy to address inmate concerns. Once an inmate files a grievance, the jail is responsible for responding to the grievance within seven days. If the inmate does not agree with the decision, he or she may appeal. The jail then has fifteen days to respond to the appeal. While incarcerated at TCJ, Olson filed twenty-one grievances and twenty-one grievance appeals. The jail never responded to any of them. Olson maintained a journal recounting the precise language of each grievance and each grievance appeal. Olson's grievances included two grievances regarding jail staff opening his legal mail outside of his presence, one regarding a denial of access to the law library, and one regarding the jail's failure to respond to grievances.

On January 2, 2009, while incarcerated at TCJ, Olson filed this complaint and a motion for class certification. Olson's complaint set forth claims for injunctive relief against the Sheriff of Tippecanoe County with respect to four basic conditions of his confinement: (1) an inadequate grievance procedure, in violation of Indiana law; (2) inadequate access to the law library, in violation of Indiana law; (3) inspection of mail from the courts outside of his presence, in violation of the First and Fourteenth

Amendments of the United States Constitution and Indiana law; and (4) inspection of mail from attorneys outside his presence, in violation of the First and Fourteenth Amendments of the United States Constitution and Indiana law. With the motion for class certification, Olson included affidavits of fifty-three inmates detailing their experiences with jail staff opening their legal mail outside of their presence, denying them access to the law library, and failing to respond to their grievances. Thirteen days after Olson filed this complaint and his motion for class certification, the Indiana Department of Correction transferred Olson to a new facility.

Brown removed this cause of action to federal court on January 20, 2009. On February 2, 2009, Brown filed his answer to the complaint. On March 13, 2009, Brown filed his Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The district court heard oral argument on Olson's Motion for Class Certification on March 18, 2009, but reserved its ruling on the class certification issue pending a ruling on Brown's Motion for Judgment on the Pleadings. On June 23, 2009, 171 days after the initial filing of this cause of action, the district court granted Brown's motion for Judgment on the Pleadings holding that Olson's transfer away from TCJ rendered this cause of action moot.

This appeal follows.

## II. Discussion

Whether a case is moot is a question of law which we review de novo. *Franzoni v. Hartmarx Corp.*, 300 F.3d 767,

771 (7th Cir. 2002). A case is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *United States Parole Commission v. Geraghty*, 445 U.S. 388, 396 (1980).

It is without question that this case would be moot if Olson had brought his claims individually. Olson only sought injunctive relief and is no longer subject to the conditions that formed the basis of his complaint. Therefore, the controversy is resolved in relation to Olson. However, Olson filed for class certification while he was a party to a live controversy. This fact would generally not save a cause of action from becoming moot upon the termination of the named plaintiff's claims prior to the certification of the class. However, timely filing for class certification can save a cause of action if it falls within the exception to the mootness doctrine announced in *Gerstein v. Pugh*, 420 U.S. 103 (1975). The issue before this court is whether Olson's claim is so "inherently transitory" that it is uncertain that any member of the class would maintain a live controversy long enough for a judge to certify a class. If so, then this case is not moot for the purpose of class certification.

In *Gerstein*, the Court addressed the issue of class certification for Florida prisoners seeking a declaratory judgment that they had a constitutional right to a probable cause hearing for pretrial detention. Before reaching the substantive issues, the Court addressed whether it had jurisdiction to hear the claim. Faced with a situation where it was likely that none of the named plaintiffs had a live claim at the time of the class certification decision,

the *Gerstein* Court specifically addressed the problem of mootness for class claims brought by pre-trial detainees. The Court found that the case was not moot, reasoning,

> At the time the complaint was filed, the named respondents were members of a class of persons detained without a judicial probable cause determination, but the record does not indicate whether any of them were still in custody awaiting trial when the District Court certified the class. Such a showing ordinarily would be required to avoid mootness under *Sonsa*. But this case is a suitable exception to that requirement. The length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time by release on recognizance, dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after trial. It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class. Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain. The attorney representing the named respondents is a public defender, and we can safely assume that he has other clients with a continuing live interest in this case.

420 U.S. at 111, n. 11 (internal citations omitted). A number of subsequent Supreme Court cases have reiterated and clarified the exception to the mootness doctrine announced in *Gerstein*. *See, e.g., Swisher v. Brady*, 438 U.S. 204 (1978); *County of Riverside v. McLaughlin*, 500 U.S. 44,

51-52 (1991). In *Swisher*, the Court affirmed a district court's decision to certify a class of juveniles involved in the juvenile court system despite the fact that the named plaintiff's claims were moot at the time of the decision. The Court in *Swisher* relied on *Gerstein*'s predecessor, *Sosna v. Iowa*, 419 U.S. 393 (1975), to find:

> There may be cases in which the controversy involving the named plaintiff is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether certification can be said to "relate back" to the filing of the complaint may depend on upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.

*Swisher*, 438 U.S. at 213, n. 11. In *McLaughlin*, the Court relied on the "inherently transitory" exception to find, "that the class was not certified until after the named plaintiffs' claims had become moot does not deprive [the Court] of jurisdiction," in a case challenging the denial of a prompt probable cause hearing for inmates in the county jail. 500 U.S. at 52.

Although we have yet to apply the *Gerstein* line of cases to a case involving jail inmates in this circuit, the Second Circuit directly addressed this issue in *Zurak v. Regan*, 550 F.2d 86 (2d Cir. 1977). In *Zurak*, a class of inmates at Rikers Island filed suit against the New York State Board of Parole alleging a violation of their due process rights regarding their conditional release. 550 F.2d at 90. All of the class members were serving a sentence of ninety-

days or more. *Id.* At the time the district court certified the class, all of the named plaintiffs had already been released from Rikers Island. *Id.* The defendants appealed the district court's ultimate decision on the merits by arguing that the case was moot at the time of class certification and therefore the district court acted without proper jurisdiction. *Id.* However, the Second Circuit found that this case was not moot at the time of class certification because it fit squarely within the exception carved out by *Gerstein*. *Id.* The court reasoned that the exception for inherently transitory claims applied in this situation because, "the relatively short periods of incarceration involved and the possibility of conditional release [created] a significant possibility that any single named plaintiff would be released prior to certification, although this possibility was less substantial than it was in *Gerstein*. As in *Gerstein*, however, the constant existence of a class of persons suffering the alleged deprivation is certain and the court may safely assume that counsel has other clients with a continuing live interest in the issues." *Id.* at 91-92 (citing *Gerstein v. Pugh*, 410 U.S. 103, 110 n. 11 (1975)).

We agree with the Second Circuit's determination that the *Gerstein* line of cases require a claim to meet two main elements for the "inherently transitory" exception to apply: (1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint. *Gerstein*, 410 U.S. at 110 n. 11; *Zurak*, 550 F.2d at 91-92. Olson's claim meets both requirements.

First, based on the stipulated facts, it is uncertain that any potential named plaintiff in the class of inmates would have a live claim long enough for a district court to certify a class. As *Gerstein* and *Zurak* both explicitly point out, the length of incarceration in a county jail generally cannot be determined at the outset and is subject to a number of unpredictable factors, thereby making it inherently transitory. While the ultimate length of confinement does affect the applicability of the "inherently transitory" exception, the essence of the exception is uncertainty about whether a claim will remain alive for any given plaintiff long enough for a district court to certify the class. In *Banks v. NCAA*, 977 F.2d 1081, 1086 (7th Cir. 1992) and *Trotter v. Klincar*, 748 F.2d 1177 (7th Cir. 1984), we specifically addressed the fact that the crux of the "inherently transitory" exception is the uncertainty about the length of time a claim will remain alive. In both cases we found that the "inherently transitory" exception did not apply because in both cases the named plaintiffs knew, from the outset, exactly how long their claims would remain alive but chose to wait to file for class certification until the claim was nearly moot or already moot. In *Banks*, the plaintiff knew from the outset that his claim would become moot 120 days from the onset of the controversy, but he purposefully chose to wait 112 days before filing his complaint. 977 F.2d at 1086. We relied on this intentional delay in filing to find that the plaintiff was precluded from benefitting from the "inherently transitory" exception to the mootness doctrine. *Id.* ("Had Banks been diligent in filing his claim shortly after discovering

that he had failed to be selected for the draft or as a free agent, and still been unable to obtain class certification, he might have been able to make an argument for the class that he had standing for the purpose of pursing a ruling on class certification even though his own individual claim had become moot."). In *Trotter*, the named plaintiff had a live claim for seventy days but never filed for class certification. The plaintiff still attempted to rely on the "inherently transitory" exception for class actions when the court ruled that his case was moot. 748 F.2d at 1184-85. Similar to our reasoning in *Banks*, we found that the "inherently transitory" exception was inapplicable in *Trotter* because the plaintiff knew that his cause of action would soon become moot but chose not to file for class certification.

Brown attempts to read *Banks* and *Trotter* to create a bright-line rule that we cannot apply the "inherently transitory" exception to a claim that has been alive beyond a given number of days. Brown argues that the "inherently transitory" exception should not apply here because Olson's delay in filing this suit is the same as the one-hundred-and-twenty-day delay in *Banks* and the seventy-day delay in *Trotter*. This analogy is misguided in two respects. First, no such bright-line rule exists. Unlike the plaintiffs in *Banks* and *Trotter*, Olson did not know when his claim would become moot. The duration of his claim was at the discretion of the Indiana Department of Correction. An individual incarcerated in a county jail may be released for a number of reasons that he cannot anticipate. Olson's transfer by the Indiana Department of Correction just thirteen days after he filed

for class certification in this suit illustrates one such unpredictable occurrence that could unexpectedly moot a claim for a county jail inmate. This uncertainty is precisely what makes the "inherently transitory" exception applicable in this case. Second, because Olson was required to exhaust his administrative remedies before filing this suit, the period of time between the first possible day he could file and the day he actually filed was only fifty-two days—a significantly shorter period of time than was at issue in *Banks* or *Trotter*.

The case at bar also meets the second requirement for the inherently transitory exception—there will be a constant class of persons suffering the deprivation. Contrary to Brown's argument, the "inherently transitory" exception to the mootness doctrine is distinct from the "capable of repetition yet evading review" exception. When the claim is inherently transitory, as it was in *Gerstein* and as it is in this case, the plaintiff must show that there will likely be a constant class of persons suffering the deprivation complained of in the complaint. This is different from when a plaintiff invokes the "capable of repetition yet evading review" exception, where the plaintiff must show that the claim is capable of repetition as to the named plaintiff. A close reading of *United States Parole Commission v. Geraghty*, 445 U.S. 388, 398-99 (1980), makes this distinction clear. In *Geraghty*, the Court first acknowledged that a plaintiff must have a reasonable expectation of being subjected to the offending behavior in the future to avail himself of the "capable of repetition yet evading review" exception to the mootness doctrine. However, the Court then turned

to *Gerstein* and found that the "inherently transitory" exception does not require any indication that the named plaintiff would be subject to the complained-of situation in the future but just that the claim is capable of repetition. *Geraghty*, 445 U.S. at 398-99. Our own precedent also supports this distinction. In *Banks*, we treated "inherently transitory" and "capable of repetition yet evading review" as two separate lines of argument by the plaintiff for why the case was not moot. 977 F.2d at 1085-86.

Because Olson asks this court to apply the "inherently transitory" exception, not the "capable of repetition yet evading review" exception, the Supreme Court's recent holding in *Alvarez v. Smith*, 588 U.S. ___, 2009 WL 4573274 (Dec. 8, 2009), is not applicable to this case. In *Alvarez*, the Court held that the plaintiffs could not rely on the "capable of repetition yet evading review" principle to avoid mootness because they could not show that they were likely to be subjected to the complained-of state procedures again. *Alvarez*, at *5-6. As discussed above, the "inherently transitory" exception does not require such a showing. Additionally, the district court in *Alvarez* denied the plaintiffs' motion for class certification. The plaintiffs never appealed that decision. Significantly, this case is in a different procedural posture. Here, Olson seeks to keep the claim alive beyond his individual claim to certify the class. If the district court certifies the class, the case can proceed to the merits for the certified class of plaintiffs. The *Alvarez* plaintiffs, through their inaction in response to the denial of class certification, conceded that their claims should not extend beyond

the life of their individual claims. The difference in procedural postures of the two cases makes *Alvarez* inapplicable to the case at hand.

Since we find that the claim "is of the kind that is unlikely to be able to certified before it becomes moot," and thereby meets the first requirement of *Gerstein*, all Olson must show is that the claim is likely to recur with regard to the class, not that the claim is likely to recur with regard to him. The pervasive nature of these claims, as evidenced by the fifty-three affidavits outlining problems similar to those complained of by Olsen, makes it likely that TCJ's alleged practices of opening inmates' legal mail, denying inmates access to the law library, and failing to respond to inmates' grievances will continue. Therefore, this case meets the second requirement of the inherently transitory exception.

As a final argument, Brown urges us to affirm the dismissal of the suit on the ground that it fails to state a claim for which relief may be sought. However, the district court did not reach this issue before dismissing the case for lack of jurisdiction. Therefore, we do not reach the issue of whether the pleadings state a claim for which relief may be sought.

Additionally, Olson asks that we address the issue of class certification. We decline this invitation. A district court has broad discretion to determine whether certification of a class action lawsuit is appropriate. *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir. 1997). Therefore, we remand to the district court to determine whether class certification is appropriate in this case.

### III. Conclusion

For the above stated reasons, we REVERSE the district court's dismissal of the complaint as moot. We REMAND for consideration of the plaintiff's motion for class certification and defendant's motion for dismissal for failure to state a claim.