**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0503n.06

**No. 09-3974**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Aug 13, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| FREDERIC M. GAWRY; LORAINE A. GAWRY; INGRID N. CARR, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE HOME LOANS SERVICING LP, | ) ) ) | |
| Defendants-Appellees. | ) ) ) | |

BEFORE: GUY, MOORE,[*] and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiffs Frederic and Loraine Gawry ("the Gawrys"), and Ingrid Carr ("Carr" or collectively with the Gawrys, "plaintiffs"), appeal the district court's order (1) granting defendants Countrywide Home Loans, Inc. and Countrywide Home Loans Servicing LP's (collectively "Countrywide" or "defendants") motion for summary judgment as to Carr; (2) granting Countrywide's motion to strike Class I(b) allegations; and (3) denying plaintiffs' motion for class certification. Because plaintiffs' claims became moot before they moved for class certification, we affirm the district court's judgment dismissing this action.

---

[*]Judge Moore did not participate in the decision of the case.

I.

In its opinion and order dismissing this action, the district court accurately set forth the facts

of the case:

> In December, 2003, [the Gawrys] executed an adjustable rate note in the amount of $310,250.00 and a mortgage securing that note. Shortly thereafter, Countrywide Home Loans, Inc. . . . acquired the Gawrys' note and mortgage which contained a prepayment/refinancing penalty. In June, 2005, the Gawrys paid off their note in full prior to its expiration date in order to refinance. To obtain a paid note and release of the mortgage lien, the Gawrys were required to pay Countrywide an $8,910.53 penalty, amounting to 2.87% of the original principal loan amount.
>
> Similarly, in August, 2004, [Carr] executed an adjustable rate note in the original principal amount of $92,800.00 and a mortgage securing that note, expressly made pursuant to R.C. § 1343. Shortly thereafter, Countrywide acquired Carr's Note and Mortgage. Carr's Note contained a prepayment rider imposing a 5% prepayment penalty of the original principal loan amount if Carr fully paid off the loan within three years of the date of the note. Three years passed, during which time Carr did not fully pay off the loan and thus did not incur any prepayment charge.
>
> On February 6, 2007, Plaintiffs filed this class action complaint against [defendants]. Plaintiffs, individually and on behalf of those similarly situated, bring several claims alleging that Countrywide violated Ohio Revised Code ("R.C.") § 1343 prohibiting residential mortgage prepayment or refinancing penalties in excess of 1% of the original principal loan amount.
>
> The Gawrys sue on behalf of Ohio residents who paid a prepayment or refinancing penalty in excess of the limits imposed by R.C. § 1343.011(C) during the six years prior to this action ("Class I"). Class I asserts four causes of action including: usury; unfair and deceptive trade practices that violate Ohio Consumer Sales Practices Act; unjust enrichment; and violation of Ohio public policy. For relief, the Gawrys request: damages in the amount the penalties exceed 1% of the original principal loan amount; a declaration that Countrywide violated R.C. § 1343.011(C) and that the prepayment provisions are therefore void and unenforceable; and appropriate injunctive and equitable relief including an award of litigation costs and attorney fees.

Carr seeks to represent those Ohio residents whose note contains a similar prepayment rider, but have not yet paid a prepayment penalty ("Class II"). Class II joins Class I in all claims except unjust enrichment. Class II requests: entry of a Court order that they may rescind or reform their loan documents to eliminate the allegedly usurious prepayment penalty provisions; a declaration that the respective notes violate R.C. § 1343.011(C); damages sustained because of the increased cost of credit created by the inclusion of the prepayment penalty provision in their notes;[1] and appropriate injunctive and equitable relief including an award of attorney fees and litigation expenses.

---

[1]Plaintiffs have subsequently dropped this claim for monetary damages. *See* ECF No. 91 at 33 (stating that no monetary relief is sought by Class II members and that "the only relief requested is for declaratory, injunctive, and equitable relief in the context of the remedy of reformation.").

---

On April 9, 2007 Countrywide filed a motion to dismiss for lack of subject matter jurisdiction arguing that the Gawrys' claims should be dismissed because: (1) Countrywide's prior offer to refund the Gawrys' penalty in the amount it exceeded Ohio's 1% limit mooted the Gawrys' claim; (2) the Gawrys failed to notify Countrywide of their claim and therefore denied Countrywide the contractually obligated opportunity to cure the alleged injury; and (3) Carr lacks standing to sue because she did not pay the prepayment penalty and thus suffered no concrete injury. The Court denied the motion to dismiss on June 13, 2007. Subsequently, the Court engaged the parties in frequent telephone conferences to facilitate settlement. On December 19, 2007, after the parties notified the Court of their inability to settle any claims, Countrywide filed a motion for summary judgment against Ingrid Carr arguing, again, that Carr lacked standing and that her state law claims are preempted by federal law. On August 25, 2008 the Court denied Countrywide's motion for summary judgment concluding that unresolved questions of material fact precluded summary judgment.

With the Court's assistance, the parties settled the claims of certain Class I members by dividing the class into two subclasses: (a) those individuals against whom Countrywide did not possess a preemption defense ("Class I(a)"); and (b) those individuals against whom Countrywide intends to present a preemption defense ("Class I(b)"). The settlement required Countrywide to refund the prepayment penalty each Putative Class I(a) member paid in excess of 1% of their original principal loan amount. To effectuate the settlement, on September 22, 2008,

Plaintiffs amended the Second Complaint to add a Fifth Claim for Relief alleging a cause of action specifically on Putative Class I(a)'s behalf and moved for class certification of Putative Class I(a). Pursuant to a February 3, 2009 fairness hearing, the Court approved the settlement by certifying Class I(a) and entering final judgment on Class I(a)'s claims, dismissing their claims with prejudice.

Pursuant to the Court's October 20, 2008 Scheduling Order, the parties subsequently engaged in discovery regarding class certification. On March 23, 2009, the parties filed the three motions now before the Court. Plaintiffs filed a Motion for Class Certification ("Motion for Class Certification") of Classes I(b) and II under Federal Rules of Civil Procedure 23(b)(2) and/or 23(b)(3). Countrywide filed a Motion to Strike Class Allegations as to Putative Class I(b) ("Motion to Strike") alleging that because there is no viable representative for Putative Class I(b), class allegations in the complaint should be removed. Additionally, Countrywide filed a Motion for Summary Judgment as to All Claims Asserted by Plaintiff Ingrid Carr ("Motion for Summary Judgment") arguing that she cannot recover her requested relief because she lacks evidence proving she suffered any cognizable harm.

(Internal citations to the record omitted.)

On July 6, 2009, the district court issued an opinion and order that: (1) granted Countrywide's motion for summary judgment as to Carr; (2) granted Countrywide's motion to strike Class I(b) allegations; and (3) denied plaintiffs' motion for class certification. Plaintiffs timely appeal those rulings.

## II.

"We review de novo a district court's finding that a plaintiff's claim is moot." *Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir. 2003) (unpublished) (citing *Greater Detroit Res. Recovery Auth. v. United States EPA*, 916 F.2d 317, 319 (6th Cir. 1990)). Article III of the Constitution limits the jurisdiction of federal courts to live cases and controversies. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). "If a case in federal court loses its character as an actual, live controversy

at any point during its pendency, it is said to be moot." *Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701, 703 (6th Cir. 2009). Should that occur, "the case is no longer within the jurisdiction of the federal courts, and therefore must be dismissed." *Id.; see also Ahmed v. Univ. of Toledo*, 822 F.2d 26, 27 (6th Cir. 1987) ("It is fundamental that we may not decide moot issues."). "*Once a class is certified,* the mooting of the named plaintiff's claim does not moot the action, the court continues to have jurisdiction to hear the merits of the action if a controversy between any class member and the defendant exists." *Brunet v. Columbus*, 1 F.3d 390, 399 (6th Cir. 1993) (citing *Sosna v. Iowa*, 419 U.S. 393, 399 (1975)). Where, however, "the named plaintiff's claim becomes moot *before* certification, dismissal of the action is required." *Brunet*, 1 F.3d at 399 (citing *Bd. of Sch. Comm'rs v. Jacobs*, 420 U.S. 128 (1975) (per curiam)); *see also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *Reed v. Heckler*, 756 F.2d 779, 785 (10th Cir. 1985) ("As a general rule, a suit brought as a class action must be dismissed for mootness when the personal claims of the named plaintiffs are satisfied and no class has been properly certified.").

### III.

### A.

The district court correctly determined that the Gawrys' claims were moot and that they therefore could not represent putative Class I(b), i.e., those individuals against whom Countrywide intended to present a preemption defense. In a September 2008 settlement agreement, the Gawrys

voluntarily agreed to "release[] and forever discharge[]" Countrywide "from any and all past, present and future claims, counterclaims, lawsuits, set-offs, costs, losses, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind . . . that arise out of [or] in any way relate or pertain to [their loan]." When the district court approved the settlement in its February 3, 2009, final order and judgment, it also indicated that: "The claims of the Representative Plaintiffs . . . against Countrywide are hereby dismissed on the merits and with prejudice[.]"[1] Plaintiffs never appealed this judgment. Moreover, all of this occurred before plaintiffs filed their March 2009 motion for class certification on behalf of Class I(b) and Class II.

Plaintiffs argue that, assuming arguendo that the Gawrys' claims are moot, "the district court still erred in declining to adopt the 'relation back' doctrine to exempt their claims from the mootness doctrine[.]" We addressed a similar argument in *Pettrey*, and noted that it may be appropriate for named plaintiffs who have resolved their claims to continue to represent a class under two circumstances: (1) where those claims are "involuntarily terminated"; or (2) where the named "plaintiffs retained a personal stake in the case because they would be able to shift part of the costs

---

[1]Plaintiffs argue that the Gawrys' claims are not moot based on Paragraph 26 of the district court's preliminary order approving settlement and Paragraph 21 of the district court's final order and judgment. Paragraph 21 of the final order and judgment states: "[N]othing in this Order shall have any *res judicata*, collateral estoppel, or law of the case effect on any aspect of the litigation concerning the Non-Settled Claims, including . . . any motion for class certification filed with respect to the Non-Settled Claims[.]" Paragraph 26 of the district court's preliminary order approving settlement contains identical language. We agree with Countrywide that "[t]he obvious purpose of Paragraph 26 [and Paragraph 21] was to protect *Countrywide* from a subsequent argument that, by agreeing to settle Class I(a) claims, it was consenting to certification of putative Class I(b) or II when a contested motion was later filed as to those classes." Neither paragraph limits the effect of the district court's unappealed judgment dismissing all of the Gawrys' claims with prejudice.

of litigation to the class members if they prevailed in their attempt at class certification." *Pettrey*, 584 F.3d at 704-05 (discussing *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980) and *United States Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980)). Neither circumstance is present in this case. Here, *prior* to moving for class certification,[2] the Gawrys voluntarily settled all of their claims against Countrywide, including all claims "relating to attorneys' fees and costs of any kind or nature[.]" As a result, the Gawrys no longer have a live case or controversy and therefore cannot represent putative Class I(b).[3] *Brunet*, 1 F.3d at 399 ("Settlement of a plaintiff's claims moots an action.") (citations and internal quotation marks omitted).

## B.

The district court also correctly held that Carr's claims were moot, and that she therefore could not represent putative Class II, i.e., those Ohio residents whose note contained a prepayment rider in excess of the limits imposed by R.C. § 1343.011(C), but had not yet paid a prepayment penalty. Carr executed her note and mortgage in August 2004 with a three-year term for prepayment

---

[2]"[C]ourts of appeals have repeatedly refused to apply *Geraghty*'s relation back doctrine when the named plaintiff's individual claims became moot *before application for class certification*." *Lusardi v. Xerox Corp.*, 975 F.2d 964, 977 (3d Cir. 1992).

[3]The district court also held that the Gawrys could not represent Class I(b) because "they are not now and have never been members of the class[,]" which was composed of persons as to whom Countrywide intended to assert a preemption defense. Because no such defense applied to the Gawrys' loan, the district court's alternative ruling was plainly correct. Similarly, Carr may not represent Class I(b) because she did not pay Countrywide a prepayment penalty. *See Sosna*, 419 U.S. at 403 ("A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court.").

rider. As explained below, although Carr had a live controversy at the time the original complaint was filed in February 2007, she no longer does.

In plaintiffs' third amended complaint, Carr sought the following relief: (a) rescission/reformation of the rider to eliminate the prepayment provision; (b) a declaration that the rider violates R.C. § 1343.011(C); and (c) unspecified equitable and injunctive relief.[4] Similarly, in their reply brief in support of their motion for class certification, plaintiffs state: "The only relief requested is for declaratory, injunctive and equitable relief in the context of the remedy of reformation." Carr's prepayment rider expired in August 2007 without her paying a prepayment penalty. Moreover, Carr defaulted on her loan and her property was sold in December 2008. The expiration of the rider alone foreclosed Carr's request for reformation and rescission, *see, e.g., S. Intermodal Logistics, Inc. v. Taylor Maid Transp., Inc.*, 338 S.E.2d 678, 678 (Ga. 1986) (refusing to reform contract after three year non-competition period expired); *Green v. Wasserman*, 236 N.Y.S.2d 430, 435 (N.Y. Civ. Ct. 1962) ("In any event, the leases having expired . . . there is nothing left to reform."), and any unspecified equitable and injunctive relief, *Carbon Fuel Co. v. United Mine Workers of Am.*, 444 U.S. 212, 214 n.2 (1979) ("The contracts have expired, and the question of injunctive relief is out of the case."). However, that relief is further precluded because, under Ohio law, when a property subject to a mortgage and note are sold to satisfy amounts due under the note, the mortgage and note are extinguished as a result of the sale. *Findlay Props., Inc. v. Ohio Sav.*

---

[4]Carr originally sought unspecified damages "as a result of the increased cost of credit created by" the allegedly usurious rider. However, she subsequently dropped her claim for monetary damages.

*Bank*, No. 5-96-27, 1997 WL 13764, at \*3 (Ohio Ct. App. Jan. 16, 1997) (unpublished) (citing

*Merchs. Fin. Co. v. Goldweber*, 35 N.E.2d 779 (Ohio 1941); *In re Hoff*, 187 B.R. 190, 195 (S.D.

Ohio 1995).

Similarly, "[i]n the context of a declaratory judgment action, allegations of past injury alone

are not sufficient to confer standing. The plaintiff must allege and/or demonstrate actual present

harm or a significant possibility of a future harm." *Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir.

2006) (citations and internal quotation marks omitted). Given that the prepayment rider has been

extinguished, and Carr has not indicated her intent to secure another loan containing a prepayment

provision in excess of Ohio limits from Countrywide or another entity that would transfer its rights

in the loan to Countrywide, Carr has failed to demonstrate any present harm or any possibility of

future harm. As a result, Carr cannot obtain any of the relief sought in her complaint, and thus

cannot serve as a class representative for Class II.

Plaintiffs argue that, even if Carr's claims have been rendered moot by the expiration of her

prepayment rider, she may represent Class II because Countrywide's conduct is "capable of

repetition, yet evading review." *See Geraghty*, 445 U.S. at 398 n. 6. Resort to that doctrine is

"limited to the situation where two elements combine[]: (1) the challenged action [is] in its duration

too short to be fully litigated prior to its cessation or expiration and (2) there [is] a reasonable

expectation that the same complaining party would be subjected to the same action again."

*Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam). "The party asserting that this

exception applies bears the burden of establishing both prongs."[5] *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005) (citing multiple cases). As noted above, Carr has failed to present evidence showing a "reasonable expectation" or a "demonstrated probability" that she will be subject to the type of Countrywide loan at issue in the future. *Weinstein*, 423 U.S. at 149; *see also Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) ("[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality."); *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (The Supreme Court "has never held that a mere physical or theoretical possibility was sufficient to satisfy the test stated in *Weinstein*. If this were true, virtually any matter of short duration would be reviewable."). Accordingly, the "capable of repetition, yet evading review" exception does not apply to the present case.[6]

---

[5]Plaintiffs cite an election case, *Corrigan v. City of Newaygo*, 55 F.3d 1211 (6th Cir. 1995), in support of their argument that "even if Carr is not herself currently subject to an illegal prepayment penalty provision, she can represent a class of people who are still subject to such a provision, as well as those who will become subject to the illegal prepayment penalty[.]" In *Lawrence*, we recognized that "the second prong [of the *Weinstein* test] is somewhat relaxed in election cases. Courts have applied the capable of repetition yet evading review exception to hear challenges to election laws even when the nature of the law made it clear that the plaintiff would not suffer the same harm in the future." *Lawrence*, 430 F.3d at 372. *See also Honig v. Doe*, 484 U.S. 305, 335-36 (1988) (Scalia, J., dissenting) (observing that "some of our election law decisions differ from the body of our mootness jurisprudence . . . in dispensing with the same-party requirement entirely, focusing instead upon the great likelihood that the issue will recur *between the defendant and the other members of the public at large* without ever reaching us.") (internal citations omitted). Because the present matter is not an election case, however, Carr must satisfy both prongs of the *Weinstein* test.

[6]Moreover, there is no reason to conclude that the alleged misconduct will evade review. As the district court stated: "Though Carr may lack standing . . . there still exist numerous individuals currently subject to a prepayment penalty, and thus facing an actual present harm or possible future

Plaintiffs next argue that Carr's claims are "inherently transitory," and therefore qualify for an exemption to the mootness doctrine. We recognize that "[s]ome claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires. In such cases, the relation back doctrine is properly invoked to preserve the merits of the case for judicial resolution." *Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) (alteration in original) (citations and internal quotation marks omitted).[7] However, "the crux of the 'inherently transitory' exception is the uncertainty about the

---

harm, who can bring an action seeking a declaratory judgment that Countrywide violated R.C. 1342.011(C)."

[7]We must note, however, that as was the case with the Gawrys' claims, Carr's personal interests became moot prior to plaintiffs' application for class certification. This fact alone makes application of the relation back doctrine to this case highly questionable. *See Crosby v. Bowater Inc. Ret. Plan for Salaried Employees of Great N. Paper, Inc.,* 382 F.3d 587, 597 (6th Cir. 2004) ("If the class action is to be maintained, therefore, there must be a named plaintiff who has such a case or controversy at the time the complaint is filed and at the time the class action is certified.") (citation and internal quotation marks omitted). *See also Lusardi*, 975 F.2d at 977 ("Still, no opinion of which we are aware allows a district court to exercise jurisdiction over a class certification motion filed by a named plaintiff lacking a live claim at the time the motion is filed."); *id.* at 983 ("We are not aware of a single case holding that a district court has subject matter jurisdiction to hear a motion to certify filed by named plaintiffs whose personal claims have expired."); *Tucker v. Phyfer*, 819 F.2d 1030, 1033 (11th Cir. 1987) ("In a class action, the claim of the named plaintiff, who seeks to represent the class, must be live both at the time he brings suit and when the district court determines whether to certify the putative class. If the plaintiff's claim is not live, the court lacks a justiciable controversy and must dismiss the claim as moot."); *Inmates of Lincoln Intake & Det. Facility v. Boosalis*, 705 F.2d 1021, 1023 (8th Cir. 1983) ("A named plaintiff must have a personal stake in the outcome of the case at the time the district court rules on class certification in order to prevent mootness of the action."). *But cf. Eckert v. Equitable Life Assurance Soc'y of United States*, 227 F.R.D. 60, 63 (E.D.N.Y. 2005) ("[I]n situations where a plaintiff has not yet had a reasonable opportunity to file a motion for class certification, namely, where there has been no 'undue delay,' the court retains subject matter jurisdiction despite the plaintiff's failure to move for class certification.").

length of time a claim will remain alive." *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010).[8] Here,

Carr knew (or should have known) that her claim would become moot when her prepayment rider

expired after three years. *See Fund for Animals, Inc. v. Hogan*, 428 F.3d 1059, 1064 (D.C. Cir.

2005) ("As a general rule, two years is enough time for a dispute to be litigated."). And yet,

plaintiffs did not move for class certification until nearly five years after Carr executed the allegedly

illegal note. Under these circumstances, we cannot say that Carr's purported injury was "so

inherently transitory" as to prevent a district court from ruling on a request for class certification

---

[8]In *Banks v. NCAA*, 977 F.2d 1081, 1086 (7th Cir. 1992) and *Trotter v. Klincar*, 748 F.2d 1177 (7th Cir. 1984), the Seventh Circuit held that:

> [T]he "inherently transitory" exception did not apply because in both cases the named plaintiffs knew, from the outset, exactly how long their claims would remain alive but chose to wait to file for class certification until the claim was nearly moot or already moot. In *Banks*, the plaintiff knew from the outset that his claim would become moot 120 days from the onset of the controversy, but he purposefully chose to wait 112 days before filing his complaint. 977 F.2d at 1086. We relied on this intentional delay in filing to find that the plaintiff was precluded from benefitting from the "inherently transitory" exception to the mootness doctrine. *Id*. ("Had Banks been diligent in filing his claim shortly after discovering that he had failed to be selected for the draft or as a free agent, and still been unable to obtain class certification, he might have been able to make an argument for the class that he had standing for the purpose of pursing a ruling on class certification even though his own individual claim had become moot."). In *Trotter*, the named plaintiff had a live claim for seventy days but never filed for class certification. The plaintiff still attempted to rely on the "inherently transitory" exception for class actions when the court ruled that his case was moot. 748 F.2d at 1184-85. Similar to our reasoning in *Banks*, we found that the "inherently transitory" exception was inapplicable in *Trotter* because the plaintiff knew that his cause of action would soon become moot but chose not to file for class certification.

*Olson*, 594 F.3d at 582.

prior to the expiration of her individual interests. *Geraghty*, 445 U.S. at 399. Therefore, we hold

that the "inherently transitory" exception is inapplicable to this case.

C.

Finally, we note that, unlike in *Geraghty*, no specific member of the putative class has sought

to be substituted as a named plaintiff in an attempt to preserve the live nature of this controversy.

*See Geraghty*, 445 U.S. at 394. Rather, plaintiffs requested within their briefs in opposition to

Countrywide's various motions for summary judgment that they be allowed to conduct discovery

in order to find a substitute representative. Clearly, this request does not comport with the

requirements for compelling discovery found within the Federal Rules of Civil Procedure. Even if

it did, however, "Plaintiffs' counsel cannot use the Federal Rules of Civil Procedure as a device to

force defendant to assist them in finding a plaintiff and establishing subject matter jurisdiction so

they can sue defendant."[9] *In re Mortgagors of Temple-Inland Mortgage Corp.*, No. 99-4633, 2001

WL 177181 at \*2 (E.D. Pa. Jan. 24, 2001) (unpublished). Indeed, under our precedent, because the

named plaintiffs' claims were moot prior to moving for class certification, and no exception to the

mootness doctrine applies to this case, the district court was "required" to dismiss this action.[10]

*Brunet*, 1 F.3d at 399. *See also Lusardi*, 975 F.2d at 983 ("Without a rule that plaintiff have a live

---

[9]In their reply brief, plaintiffs appear to acknowledge that their discovery request was not in compliance with the Federal Rules of Civil Procedure. They note, however, that "[h]ad the district court deemed the request an appropriate one, Plaintiffs *would have propounded appropriate* discovery on Countrywide in order to facilitate the requested intervention." (Emphasis added.)

[10]Because we decide this case on mootness grounds, we do not address the district court's decision to deny class certification on the merits. *See Steel Co.*, 523 U.S. at 94 (holding that the merits of a case cannot be decided where there is no jurisdiction).

claim at least when the motion to certify is filed, the 'case or controversy' requirement would be almost completely eviscerated in the class action context . . . .").

IV.

For these reasons, we affirm the judgment of the district court.