In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 24-2153

EUGENE WESTMORELAND,

*Plaintiff-Appellant,*

*v.*

LATOYA HUGHES,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:23-cv-14044 — **John J. Tharp, Jr.**, *Judge.*

———————————

ARGUED APRIL 16, 2025 — DECIDED JULY 17, 2025

———————————

Before SYKES, *Chief Judge*, and ST. EVE and JACKSON-AKIWUMI, *Circuit Judges*.

JACKSON-AKIWUMI, *Circuit Judge*. Eugene Westmoreland is an Illinois inmate who uses a wheelchair. He knew that he was headed to a prison transfer facility which had showers he would not be able to access. He filed this putative class action asking only for prospective relief: that the showers be made accessible.

Westmoreland's suit faces two major hurdles. One, he filed suit without first complaining about the showers through the prison's internal grievance process as required by the Prison Litigation Reform Act (PLRA). Two, he lost his personal stake in this litigation when, six weeks after filing suit, he was moved from the facility with inaccessible showers to a prison with accessible showers.

The district court found this second hurdle—Westmoreland's transfer—made his personal claim moot. And the court determined no exception to mootness applied that could save the class action because of the first hurdle: Westmoreland was uniquely subject to an attack by the defense that he had not filed an internal grievance as required, making him an inadequate class representative according to the law. We agree with the district court's analysis in full. So we affirm.

## I

In 2023, Westmoreland was sentenced to custody in the Illinois Department of Corrections (IDOC). The sentence meant an imminent transfer from the county jail housing him to a processing center for new arrivals to the IDOC—the Northern Reception and Classification Center (NRC). At the NRC, inmates undergo a series of medical and security assessments before receiving a permanent prison placement. The NRC has two shower stalls in each housing unit. An expert hired by Westmoreland found that the shower stalls are inaccessible to individuals using a wheelchair, crutch, or cane because they lack a seat, are too narrow, and have a half inch lip to enter and exit.

Westmoreland was cognizant of the problem ahead. So, while awaiting transfer to the NRC, he sued the acting director of the IDOC, Latoya Hughes, in her official capacity. Westmoreland's suit brought a claim under the Americans with Disabilities Act and the Rehabilitation Act for failing to provide accessible showers at the NRC. He sought injunctive and declaratory relief, and to represent a class of similarly situated individuals who have a prescribed mobility aid and are, or will be, held at the NRC. Two days after Westmoreland filed suit, he was moved to the NRC as anticipated. Then, 42 days after Westmoreland arrived at the NRC, he was transferred to his permanent placement at Taylorville Correctional Center.

Given that Westmoreland was no longer housed at the NRC, Hughes moved to dismiss the suit, as relevant here, for lack of subject matter jurisdiction. The district court granted the motion. The court reasoned that it lacked jurisdiction because Westmoreland's claim for injunctive and declaratory relief had become moot, and no exception to mootness applied. Westmoreland now appeals.

## II

Article III of the Constitution limits our jurisdiction to actual cases and controversies. *Murthy v. Missouri*, 603 U.S. 43, 56 (2024). "[C]ases that do not involve actual, ongoing controversies are moot and must be dismissed for lack of jurisdiction." *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 490–91 (7th Cir. 2004) (cleaned). The rule applies throughout the litigation, meaning "[i]f an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (cleaned). Mootness is a

question of law that we review de novo. *Olson v. Brown*, 594 F.3d 577, 580 (7th Cir. 2010).

Because Westmoreland only sought prospective relief and was transferred out of the NRC, his claim is moot unless saved by an exception. Westmoreland acknowledges that both his individual and class claims are moot but argues that his class claim is revived by an exception to mootness—the inherently transitory exception—which we return to below.

But first, although Westmoreland argues only for the inherently transitory exception, we, like the district court, also considered a different doctrine that would render his claim not moot: the capable-of-repetition-but-evading-review doctrine. Like the district court, we find it inapplicable because there is no indication that Westmoreland will be returned to the NRC. *See Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (explaining the application of the doctrine).

Returning to the mootness exception at issue here: Westmoreland is correct that otherwise moot class claims can be saved by the inherently transitory exception. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399–400 (1980). The exception applies where "(1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint." *Olson*, 594 F.3d at 581.

But, there must be a possible class action to take advantage of the exception. And a class action requires an adequate class representative, who has claims and defenses typical of the class. *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015) (citing Fed. R. Civ. P. 23(a)). "Where it is predictable that

a major focus of the litigation will be on an arguable defense unique to the named plaintiff … then the named plaintiff is not a proper class representative." *Koos v. First Nat. Bank of Peoria,* 496 F.2d 1162, 1164 (7th Cir. 1974). So, the question becomes: Is Westmoreland subject to a strong defense that makes him an inadequate class representative? We look to the PLRA for the answer.

Congress enacted the PLRA to curb the rise in prisoner litigation in the 1990s. The statute includes a strong exhaustion provision. 42 U.S.C. § 1997e(a). Before filing in federal court, prisoners must exhaust all available administrative remedies for all claims, *Porter v. Nussle*, 534 U.S. 516 (2002), even where the administrative process cannot grant the relief requested, *Booth v. Churner*, 532 U.S. 731, 734 (2001). The Supreme Court has "reject[ed] every attempt to deviate … from [the PLRA's] textual mandate." *Ross v. Blake*, 578 U.S. 632, 640–41 (2016). But the text has embedded flexibility: prisoners "must exhaust available remedies, but need not exhaust unavailable ones." *Id.* at 642. An administrative process that is "a simple dead end" or "incapable of use" is "unavailable" under the statute. *Id.* at 643–44.

The IDOC has established procedures for a prisoner to complain about conditions. A complaint about the correctional facility where the prisoner is housed must be submitted to that facility. Ill. Admin. Code tit. 20, § 504.810(a). A complaint about any other facility must be submitted directly to the Administrative Review Board. *Id.* § 504.870(a)(4). Westmoreland's argument, that the administrative grievances procedure was unavailable because he could not file a grievance with the NRC before being transferred there, is foreclosed by *Woodford v. Ngo*, 548 U.S. 81 (2006). In *Woodford*, the Court

rejected the argument that availability under the PLRA turned on administrative remedies *presently* available. *Id.* at 100. The prisoner in *Woodford* filed a grievance too late and was then barred from filing the grievance at all, which he argued made the grievance process unavailable to him. *Id.* at 87–88. The Court held that because the prisoner failed to comply with the timing requirements of the grievance process, he failed to exhaust and could not maintain a federal suit. *Id.* at 93. The Court explained that adopting the prisoner's position would allow "a party to bypass deliberately the administrative process by flouting the agency's procedural rules," which cannot have been Congress's intent in mandating exhaustion under the PLRA. *Id.* at 97; *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited.").

The same logic applies here. Westmoreland argues the grievance process was unavailable to him because he could not file a complaint before being transferred to the NRC. In the same way that deliberately filing late would bypass the established process, deliberately filing early would be a loophole to the strict exhaustion requirement. And practically, it would subvert the PLRA since prisoners could bypass the exhaustion requirement by filing a lawsuit before experiencing conditions about which they would file a grievance. Because the administrative complaint process was not unavailable under the PLRA, Westmoreland was required to exhaust the process before filing this suit. 42 U.S.C. § 1997e(a). His failure to do so means that he, at the very least, is subject to a strong exhaustion defense for having failed to file a grievance.

Westmoreland's additional arguments that the NRC grievance process was unavailable to him are unavailing. He argues that prison officials have a duty to inform individuals of the grievance process before individuals reach a prison but points to no authority for this proposition. He also argues that the district court was wrong to dismiss his suit for failure to exhaust, but the district court did not—it dismissed due to mootness. In district court, Hughes's argument that Westmoreland failed to exhaust was a stand-alone affirmative defense and relevant to the mootness analysis. But since the district court only reached the mootness question, the court considered only if Westmoreland was *subject* to strong exhaustion defense. In other words, the prospect that Hughes would mount an affirmative defense based on Westmoreland's failure to exhaust was an important part of the mootness analysis, but exhaustion itself was not the grounds for dismissal. Westmoreland's misunderstanding of the district court's decision spoils his remaining arguments, which focus not on mootness but on Hughes's burden to prove an affirmative defense.

Because Westmoreland is likely subject to a strong exhaustion defense, he is an inadequate class representative. *Koos*, 496 F.2d at 1164. Westmoreland does not appear to contest that if subject to a strong exhaustion defense, he cannot bring a class claim and he does not allege that another adequate class representative exists. (We assume that only one member of the class action would need to exhaust under the PLRA. *See, e.g.*, *Meisberger v. Donahue*, 245 F.R.D. 627, 629 (S.D. Ind. 2007) (collecting cases).) As such, this suit cannot be certified as a class action. Without a possible class action, Westmoreland cannot save his class claim via the inherently transitory exception and this suit is moot. *See Trotter v. Klincar*, 748

F.2d 1177, 1183 (7th Cir. 1984) (explaining the exception allows a certified class to preserve a cognizable interest that existed at the time of filing).

*   *   *

We pause to acknowledge that—between the PLRA and the limits of our subject matter jurisdiction—this type of suit faces difficult procedural hurdles. Because the median stay at the NRC is just 24 days, the average prisoner would need to exhaust or show the grievance process's unavailability and file suit in under a month before risking mootness. That is no easy task. Westmoreland was unable to thread that needle here, leaving us unable to reach the merits of his claim.

### III

Without the inherently transitory exception to mootness, Westmoreland cannot resurrect his moot claim. Accordingly, we AFFIRM.