*89 Justice Breyer
delivered the opinion of the Court.
We granted certiorari in this case to determine whether Illinois law provides a sufficiently speedy opportunity for an individual, whose car or cash police have seized without a warrant, to contest the lawfulness of the seizure. See U. S. Const., Arndt. 14, § 1; United States v. Von Neumann, 474 U. S. 242 (1986); United States v. $8,850, 461 U. S. 555 (1983). At the time of oral argument, however, we learned that the underlying property disputes have all ended. The State has returned all the cars that it seized, and the individual property owners have either forfeited any relevant cash or have accepted as final the State’s return of some of it. We consequently find the case moot, and we therefore vacate the judgment of the Court of Appeals and remand the case to that court with instructions to dismiss. United States v. Munsingwear, Inc., 340 U. S. 36, 39 (1950); see also E. Gressman, K. Geller, S. Shapiro, T. Bishop, & E. Hartnett, Supreme Court Practice 941-942 (9th ed. 2007).
I
Illinois law provides for forfeiture of movable personal property (including cars and cash) used “to facilitate” a drug crime. Ill. Comp. Stat., ch. 720, § 570/505(a)(6) (West 2008). It permits a police officer to seize that property without a warrant where (1) the officer has “probable cause to believe” the property was so used and (2) a “warrantless seizure .. . *90 would be reasonable” in the circumstances. §570/505(b). When an officer has seized property without a warrant, the relevant law enforcement agency must notify the State’s attorney within 52 days of the seizure; the State’s attorney must notify the property owner of any impending forfeiture within a further 45 days; and, if the owner wishes to contest forfeiture, the State’s attorney must begin judicial forfeiture proceedings within yet a further 45 days. See ch. 725, §§ 150/5-150/6. Thus, the statute gives the State up to 142 days, nearly five months, to begin judicial forfeiture proceedings — during which time the statute permits the State to keep the car or cash within its possession.
On November 22, 2006, six individuals (respondents or plaintiffs) brought this federal civil rights action against defendants the city of Chicago, the superintendent of the Chicago Police Department, and the Cook County State’s Attorney (the petitioner here, whom we shall call the “State’s Attorney”). See Rev. Stat. § 1979, 42 U. S. C. § 1983. Three of the individuals, Chermane Smith, Edmanuel Perez, and Tyhesha Brunston, said that earlier in 2006 the police had, upon their arrests, seized their ears without a warrant. See Complaint ¶25, App. 34a (Smith, seizure on Jan. 19, 2006); id., ¶ 26, at 34a (Perez, seizure on Mar. 8, 2006); id., ¶ 27, at 34a (Brunston, seizure on Apr. 8, 2006); Plaintiffs’ Motion for Class Certification ¶ 8, App. 39a. The other three plaintiffs, Michelle Waldo, Kirk Yunker, and Tony Williams, said that earlier in 2006 police had, upon their arrests, seized their cash without a warrant. See Complaint ¶ 28, App. 34a-35a (Waldo, seizure on Jan. 20, 2006); id., ¶ 29, at 35a (Yunker, seizure on Sept. 26, 2006); id., ¶ 30, at 35a (Williams, seizure in July 2006); Plaintiffs’ Motion for Class Certification ¶ 8, App. 39a. The plaintiffs added that the police department still had custody of their property. See Complaint ¶¶ 24-30, App. 34a-35a. They claimed that the failure of the State to provide a speedy postseizure hearing violated the Federal Due Process Clause. See U. S. Const., Arndt. 14, § 1. And *91 they asked the court (1) to certify the case as a class action, (2) to declare that they had a due process right to a prompt postseizure probable-cause hearing, (3) to declare that the hearing must take place within 10 days of any seizure, and (4) to enjoin the defendants’ current practice of keeping the property in custody for a longer time without a judicial determination of probable cause. See Complaint ¶ 36, App. 36a.
The defendants moved to dismiss the complaint on the ground that Seventh Circuit precedent made clear that “the Constitution does not require any procedure prior to the actual forfeiture proceeding.” Jones v. Takaki, 38 F. 3d 321, 324 (1994) (citing Von Neumann, supra, at 249). On February 22, 2007, the District Court granted the motion to dismiss. It also denied the plaintiffs’ motion for class certification. The plaintiffs appealed.
On May 2, 2008, the Seventh Circuit decided the appeal in the plaintiffs’ favor. Smith v. Chicago, 524 F. 3d 834. It reconsidered and departed from its earlier precedent. Id., at 836-839. It held that “the procedures set out in” the Illinois statute “show insufficient concern for the due process right of the plaintiffs.” Id., at 838. And it added that, “given the length of time which can result between the seizure of property and the opportunity for an owner to contest the seizure under” Illinois law, “some sort of mechanism to test the validity of the retention of the property is required.” Ibid. The Court of Appeals reversed the judgment of the District Court and remanded the case for further proceedings. Id., at 839. Its mandate issued about seven weeks thereafter.
On February 23, 2009, we granted certiorari to review the Seventh Circuit’s “due process” determination. The Court of Appeals had already recalled its mandate. The parties filed briefs in this Court. We then recognized that the ease might be moot, and we asked the parties to address the question of mootness at the forthcoming oral argument.
*92 At oral argument counsel for both sides confirmed that there was no longer any dispute about ownership or possession of the relevant property. See Tr. of Oral Arg. 5 (State’s Attorney); id., at 56-57 (plaintiffs). The State had returned the cars to plaintiffs Smith, Perez, and Brunston. See id., at 5. Two of the plaintiffs had “defaulted,” apparently conceding that the State could keep the cash. Ibid. And the final plaintiff and the State’s Attorney agreed that the plaintiff could keep some, but not all, of the cash at issue. Id., at 5, 56-57. As counsel for the State’s Attorney told us, “[T]hose cases are over.” Id., at 5.
II
The Constitution permits this Court to decide legal questions only in the context of actual “Cases” or “Controversies.” Art. III, §2. An “‘actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.’ ” Preiser v. Newkirk, 422 U. S. 395, 401 (1975) (quoting Steffel v. Thompson, 415 U. S. 452, 459, n. 10 (1974)). In this case there is no longer any actual controversy between the parties about ownership or possession of the underlying property.
The State’s Attorney argues that there is a continuing controversy over damages. We concede that the plaintiffs filed a motion in the District Court seeking damages. But the plaintiffs filed their motion after the Seventh Circuit issued its opinion. And, before this Court granted certiorari, the Court of Appeals recalled its mandate, taking the case away from the District Court before the District Court could respond to the motion. Thus, we have before us a complaint that seeks only declaratory and injunctive relief, not damages.
The plaintiffs point out that they sought certification of a class. And a class might well contain members who continue to dispute ownership of seized property. But that fact is beside the point. The District Court denied the plaintiffs’ *93 class certification motion. The plaintiffs did not appeal that denial. Hence the only disputes relevant here are those between these six plaintiffs and the State’s Attorney; those disputes concerned cars and cash; and those disputes are now over. United States Parole Comm’n v. Geraghty, 445 U. S. 388, 404 (1980) (“A named plaintiff whose claim expires may not continue to press the appeal on the merits until a class has been properly certified”).
The parties, of course, continue to dispute the lawfulness of the State’s hearing procedures. But that dispute is no longer embedded in any actual controversy about the plaintiffs’ particular legal rights. Rather, it is an abstract dispute about the law, unlikely to affect these plaintiffs any more than it affects other Illinois citizens. And a dispute solely about the meaning of a law, abstracted from any concrete actual or threatened harm, falls outside the scope of the constitutional words “Cases” and “Controversies.” See, e. g., Lewis v. Continental Bank Corp., 494 U. S. 472, 477 (1990); North Carolina v. Rice, 404 U. S. 244, 246 (1971) (per curiam); Aetna Life Ins. Co. v. Haworth, 300 U. S. 227, 241 (1937); Mills v. Green, 159 U. S. 651, 653 (1895).
We can find no special circumstance here that might warrant our continuing to hear the case. We have sometimes heard attacks on practices that no longer directly affect the attacking party, but are “capable of repetition” while “evading review.” See, e. g., Federal Election Comm’n v. Wisconsin Right to Life, Inc., 551 U. S. 449, 462 (2007); Southern Pacific Terminal Co. v. ICC, 219 U. S. 498, 515 (1911). Yet here, unlike those cases, nothing suggests that the individual plaintiffs will likely again prove subject to the State’s seizure procedures. See Los Angeles v. Lyons, 461 U. S. 95, 109 (1983) (“[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality”); DeFunis v. Odegaard, 416 U. S. 312, 318-319 (1974) (per curiam). And in any *94 event, since those who are directly affected by the forfeiture practices might bring damages actions, the practices do not “evade review.” See Memphis Light, Gas & Water Div. v. Craft, 436 U. S. 1, 8-9 (1978) (damages claim saves case from mootness). Consequently, the case is moot. See, e. g., Preiser, supra, at 403-404; Mills, supra, at 658.
III
It is less easy to say whether we should order the judgment below vacated. The statute that enables us to vacate a lower court judgment when a case becomes moot is flexible, allowing a court to “direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.” 28 U. S. C. § 2106; see also U. S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U. S. 18, 21 (1994). Applying this statute, we normally do vacate the lower court judgment in a moot case because doing so “clears the path for future relitigation of the issues between the parties,” preserving “the rights of all parties,” while prejudicing none “by a decision which . . . was only preliminary.” Munsingwear, 340 U. S., at 40.
In Bancorp, however, we described circumstances where we would not do so. We said that, “[w]here mootness results from settlement” rather than “ ‘happenstance,’ ” the “losing party has voluntarily forfeited his legal remedy . . . [and] thereby surrendered] his claim to the equitable remedy of vacatur.” 513 U. S., at 25. The plaintiffs, pointing out that the State’s Attorney agreed to return all three ears and some of the cash, claim that, with respect to at least four of the plaintiffs, this case falls within Bancorp’s “settlement” exception.
In our view, however, this case more closely resembles mootness through “happenstance” than through “settlement” — at least the kind of settlement that the Court considered in Bancorp. Bancorp focused upon a bankruptcy- *95 related dispute that involved a legal question whether a bankruptcy court could lawfully confirm a debtor’s Chapter 11 reorganization plan if the plan relied upon what the debtor said was a special exception (called the “new value exception”) to ordinary creditor priority rules. Id., at 19-20. The parties contested that legal issue in the Bankruptcy Court; they contested it in an appeal of the Bankruptcy Court’s order to the Federal District Court; they contested it in a further appeal to the Court of Appeals; and eventually they contested it in this Court. Id., at 20. While the ease was pending here, the parties settled their differences in the Bankruptcy Court (the court where the case originated)— including their differences on this particular contested legal point. Ibid. They agreed upon a reorganization plan, which they said would constitute a settlement that mooted the federal case. Ibid.
Recognizing that the reorganization plan that the Bankruptcy Judge confirmed in the case amounted to a settlement that mooted the case, this Court did not vacate the lower court’s judgment. The Court’s reason for leaving the lower court’s judgment in place was that mootness was not a result of “the vagaries of circumstance.” Id., at 25. Rather the party seeking review had “caused the mootness by voluntary action.” Id., at 24 (emphasis added). By virtue of the settlement, that party had “voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari.” Id., at 25. Hence, compared to mootness caused by “happenstance,” considerations of “equity” and “fairness” tilted against vacatur. Id., at 25-26.
Applying these principles to the case before us, we conclude that the terminations here fall on the “happenstance” side of the line. The six individual cases proceeded through a different court system without any procedural link to the federal case before us. To our knowledge (and we have examined the state-court docket sheets), no one in those cases raised the procedural question at issue here. Rather, the *96 issues in those six cases were issues solely of state substantive law: Were the cars and the cash forfeitable or not? And court docket sheets suggest that the six state cases terminated on substantive grounds in the ordinary course of such state proceedings. In the three automobile cases, the State voluntarily dismissed the proceedings and returned the cars between 11 and 40 months after the seizures, a long enough time for the State to have investigated the matters and to have determined (after the termination of any related criminal proceedings) for evidentiary reasons that it did not wish to claim the cars. See Dockets in People v. 2004 Chevrolet Impala, No. 2006-COFO-000296 (Cir. Ct. Cook Cty., Ill.) (Brunston’s car returned on July 27, 2009); People v. Smith, No. 2006-COFO-000036 (Cir. Ct. Cook Cty., Ill.) (Smith’s car returned on May 5, 2008); and People v. 1999 Chevrolet Malibu, No. 2OO6-COFO-000288 (Cir. Ct. Cook Cty., Ill.) (Perez’s car returned on Jan. 29, 2007). In the remaining contested case, involving cash, the State voluntarily dismissed the proceedings after 14 months, again a long enough time for the State to have weighed the evidence and found a compromise settlement appropriate on the merits. See Docket in People v. $1,500 in U. S. Currency, No. 2006-COFO-000201 (Cir. Ct. Cook Cty., Ill.) (Waldo’s cash returned on Mar. 19, 2007). The disparate dates at which the plaintiffs’ forfeiture proceedings terminated — 11, 14, 27, and 40 months after the seizures — indicate that the State’s Attorney did not coordinate the resolution of the plaintiffs’ state-court cases, either with each other or with the plaintiffs’ federal civil rights case. Cf. Munsingwear, supra, at 39-40 (stating that a lower court judgment would have been vacated even though an action of the party seeking review had brought about the mootness because that action — a commodity being decontrolled by Executive Order — was basically unrelated); see also Fleming v. Munsingwear, Inc., 162 F. 2d 125, 127 (CA8 1947).
For these reasons, we believe that the presence of this federal case played no significant role in the termination of *97 the separate state-court proceedings. This conclusion is reinforced by the fact that neither party, although aware of Bancorp, suggested the contrary at oral argument. Indeed, both parties argued against mootness at oral argument, a fact that farther suggests that a desire to avoid review in this case played no role at all in producing the state case terminations. Tr. of Oral Arg. 5-11, 33-38. And if the presence of this federal ease played no role in causing the termination of those state cases, there is not present here the kind of “voluntary forfeit[ure]” of a legal remedy that led the Court in Bancorp to find that considerations of “fairness” and “equity” tilted against vacatur.
We consequently conclude that we should follow our ordinary practice, thereby “clearing] the path for future relitigation of the issues.” Munsingwear, 340 U. S., at 40. Thus, nothing in this opinion prevents the plaintiffs from bringing a claim for damages based on the conduct alleged in their complaint. Id., at 37-40.
We therefore vacate the judgment of the Court of Appeals and remand the case to that court with instructions to dismiss.

It is so ordered.