ACCEPTED
01-14-00694-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
9/23/2015 1:41:11 AM
CHRISTOPHER PRINE
CLERK

# No-01-14-00694-CV

## IN THE FIRST DISTRICT COURT OF TEXAS

## HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

9/23/2015 1:41:11 AM

CHRISTOPHER A. PRINE
Clerk

## DIOGU KALU DIOGU II, LL.M.

### *APPELLANT*

*Vs*

### *YAOWAPA RATTANA APRN*

### *APPELLEE*

## APPEAL FROM THE 387TH JUDICIAL DISTRICT COURT FORT BEND COUNTY, TEXAS

## FIRST APPELLANT AMENDED MOTION FOR REHEARING AND EN BANC RECONSIDERATION

DIOGU KALU DIOGU II, LL.M.
DIOGU LAW FIRM
P. O. BOX 994
FULSHEAR, TEXAS 77441
Diogu.diogu.law.firm@gmail.com
Phone (713) 791 3225
Fax    (832) 408 7611

## ORAL ARGUMENT REQUESTED

1

**IDENTITY OF PARTIES AND COUNSEL**

**APPELLANT/COUNTER-DEFENDANT**

**DIOGU KALU DIOGU II**

**COUNSEL FOR APPELLANTS**

Diogu Kalu Diogu II
Diogu Law Firm
P. O. Box 994
Fulshear, Texas 77441
Phone (713) 791-3225
Fax. (832) 408-7611

**APPELLEE/COUNTER PLAINTIFF**

Ms. Yaowapa Ratana-Aporn

**COUNSEL FOR APPELLEE**

**Mario Martinez**
Law Offices of Mario A Martinez PLLC
23123 Cinco Ranch Blvd #208
Katy TX 77494

# I. ISSUES PRESENTED

1. **THE PANEL'S ANALYSIS OF THE MOOTNESS DOCTRINE IGNORES THE FACT AND MISSTATES THE LAW**

2. **THE THREE JUDGE PANEL AFFIRMANCE OF THE TRIAL COURT'S JUDGMENT WAS UNCONSTITUTIONAL, A VIOLATION OF THE TEXAS RULES OF APPELLATE PROCEDURE AND ARBITRARY BECAUSE IT WAS DECIDED BY *A THREE JUDGE PANEL OF ONE*[1] - CHIEF JUSTICE RADACK**

## II.    PREFACE

The appellant filed this his first amended motion for rehearing and En banc consideration pursuant to T.R.A.P 38.7 and 49.6. He filed it to correct some clerical errors and to give the Court an opportunity to articulate under what condition a motion Judge should refer a motion to a three judge panel for a decision. Presently, the common practice is to leave that decision at the discretion of one judge. As can be seen here such a decision may have catastrophic consequence like in this case.

## III.    INTRODUCTION:

The Appellant filed Motion for Rehearing and En Banc Reconsideration because the Panel issued not just a mere adverse opinion but a flawed one when in affirming the lower Court's Judgment it held that the "voluntary lifting of notice of

---

[1] Indicates that Judge Radack's sole decision led the two other members of the panel to reach this erroneous decision

Lis Pendens does not render those claims for monetary damages moot". This disturbing holding is beguiling in its superficiality and simplicity. It so flawed that even the Panel's reliance on *James v. Calkins*, 446 S.W.3d 135, 144 (Tex. App.— Houston [1st Dist.] 2014, pet. filed) (plaintiff's voluntary nonsuit did not moot defendant's claims for costs, fees, and sanctions) was misplaced.

Further, the panel decision was flawed because it was precipitated by Justice Radack's obstruction of justice. Her conduct caused the three judge panel to affirm the lower court's judgment when they could not reach a decision on ***Diogu's Lack Of Notice*** and the trial court's ***Denial Of His Right To A Jury Trial*** issues because of a lack of reporter's record. In essence that decision was reached by only one judge panel, Justice Radack in violation of the Texas Appellate Rules of Procedure.

## IV. PUBLIC INTEREST REQUIRES A REHEARING AND EN BANC RECONSIDERATION:

The Appellant asserts that the Panel of this court(s) has committed grave errors of judgment that are of such importance to the public interest of this state, it should compel correction. In this case the Panel affirmed the Judgment of the lower court by holding that the voluntary lifting of notice of Lis Pendens does not render those claims for monetary damages moot even though by law there was no Lis Pendens filed by the Appellant in the Fort Bend County Deed Record when the Appellee filed her claims for monetary damages. This is very remarkable because

4

if it holds, this three judge panel of the First Court of Appeal of the States would single handedly amend not just the Constitution of the State of Texas but that of the United States of America, the interpretation of the relevant constitutions by the Supreme Court of both the States of Texas and United States of America as it relates to the construction and/or interpretation of the case and controversy principles as it relates to the mootness doctrine.

The Appellant also asserts that the decision to affirm the lower court's judgment is so flawed that it needs review because it was made by *a judge panel of one – Judge Radack*.

## V. THE PANEL FAILED TO ADHERE TO PRECEDENTS

This is disturbing because the panel patently rejected both the Constitution of the State Texas and Texas Supreme Court's interpretation of the that Constitution because the Texas Supreme Court has repeatedly held that a court cannot decide a case that becomes moot before and during the pendency of the litigation. *Heckman v. Williamson Cnty*., 369 S.W.3d 137, 162 (Tex. 2012). No justiciable controversy exists if the issues/dispute that spurred the lawsuit are no longer "live" or if the parties lack a legally cognizable interest in the outcome. *Heckman*, 369 S.W.3d at 162. The Texas Constitution of Texas as it relates to Cases or controversy is identical and/or analogous to t*he US Constitution which permits Court to decide legal questions only in the context of actual "Cases"*

*or "Controversies." U. S. Const., Art. III, §2. An "`actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'"* Preiser v. Newkirk, 422 U. S. 395, 401 (1975) *(quoting* Steffel v. Thompson, 415 U. S. 452, 459, n. 10 (1974))*.*

On the other hand this holding may have been as a result of the confusing nature of the timeline in this case or the manner to which[2] it was briefed by the Appellant as such the court's opinion is understandable. Also, the holding could be perfectly logical if the Appellee had filed their lawsuit seeking damages and declaratory judgment before the Appellant voluntarily lifted his Lis Pendens but that was not the case. As a result there was no *actual "Cases" or "Controversies." Because at the time Appellee* sought monetary damages *the case was moot since* there was no Lis Pendens in the Fort Bend County Real Property Record when the Appellee first filed its damage claims etc. with the Court

## VI. THE CASE IN MOST PART WAS DECIDED BY A ONE JUDGE PANEL - JUDGE RADACK WHO PREVENTED THE EMPANELED TWO OTHER JUDGES FROM MAKING THE FINE JUDGMENTS THEY WOULD HAVE MADE IN THIS CASE BUT FOR HER OBSTRUCTION

In this case the three judge panel (the umpire) overruled Diogu Issues on Lack Of Notice Of Trial Setting and Denial Of Right To A Jury Trial because of the sand thrown in their eyes by Justice Radack in her adverse ruling on Diogu's

---

[2] Appellant briefed the case in the mist of excruciating lower back pain that affected his concentration. See Appellant's motion to abate this appeal which part of the record in this case that was uncharacteristically denied by Chief Judge Radack who interestingly was one of the three judge panel

Motion to abate appeal.  Her ruling which had so much effect on this panel should have been made by a three judge panel. Her ruling prevented the three Judge panel in this appeal from making the fine judgments would have made. But for the Sand that was thrown in their eyes by Judge Radack they would reversed and remanded the case to the trial court.

## RELEVANT STATEMENT OF THE FACTS

### CRITICAL AND CONTROLLING TIMELINES EVISCERATES THE PANEL'S VERY FLAWED DECISION

Appellant filed an Original and Amended petition for Annulment from his wife including a TRO and an injunction. CR.17-34.

Also, contained in the TRO/injunctions was an allegation that the Defendants' were planning to secrete her property from the United States and or conceal from the Petitioner, therein and appellant herein the property (real[3] and Personal) CR.31-33, 44-45. When real property became an issue in the litigation. Id. To maintain the status quo the Appellant filed a Lis Pendens on a premises described as Lot Twenty Three (23) in Block One (1) of Cinco Ranch Greenway Village, Section Nine (9), A Subdivision in Fort Bend County, Texas According to the Map or Plat Thereof Recorded Under Slide No (s) 1550/B, 1551/A and 1551/B

---

[3]  At that her only real property was a premises described as Lot Twenty Three (23) in Block One (1) of Cinco Ranch Greenway Village, Section Nine (9), A Subdivision in Fort Bend County, Texas According to the Map or Plat Thereof Recorded Under Slide No (s) 1550/B, 1551/A and 1551/B of the Plat Record of Fort Bend County, Texas.

of the Plat Record of Fort Bend County, Texas. Id. and once the TRO and the Injunction related issues were resolved and or abandoned on or about April 09th, 2013, the appellant cancelled and expunged the Lis Pendens. TAB A., 17-19 2SCR.20-22

However, on or about April 22nd, 2013 after the Lis. Pendens have been cancelled and expunged, the Appellee filed a Counterclaim and Declaratory solely based on the allegations contained in on the Appellant's Original and subsequent amended Petition for Annulment and the filing of the Lis Pendens. CR.126-33.

On or about April 15th, 2013 and October 30th, 2013 the Appellant nonsuited his wife and the Appellee respectively. CR.122-125 and CR.134-136. Nonetheless, the Appellee maintained her Counterclaims even though she no longer owned the premises described as Lot Twenty Three (23) in Block One (1) of Cinco Ranch Greenway Village, Section Nine (9), A Subdivision in Fort Bend County, Texas According to the Map or Plat Thereof Recorded Under Slide No (s) 1550/B, 1551/A and 1551/B of the Plat Record of Fort Bend County, Texas. TAB A. 17-19, 2SCR. 20-22. Further, nonetheless, the district court granted default judgment.

The specific and relevant fact is that on or about April 09th, 2013, the appellant expunged the Lis Pendens at issue in this case. TAB A., 17-19 2SCR.20-22. Following that on or about April 22nd, 2013 after the Lis Pendens have been cancelled and expunged, the Appellee for the first time, filed a Counterclaim and

Declaratory solely based on the Lis Pendens and on the allegations contained in on the Appellant's Original and subsequent amended Petition for Annulment and the filing of the Lis Pendens. CR.126-33.

**CHIEF JUSTICE RADACK WHO IN DIOGU'S OPINION DOES NOT CONSTITUTE A JURY OF HIS PEER[4] SINGLE HANDEDLY DEPRIVED DIOGU OF HIS RIGHT TO HAVE HIS APPEAL HEARD AND DECIDED BY THE JURY OF HIS PEERS – THREE JUDGE PANEL OF NORMAL FELLOW TEXAS CITIZENS.**

Chief Justice Radack[5] is the wife of a powerful Republican Harris County commissioner Honorable Steve Radack. Honorable Justice Sherry Radack was appointed Chief Justice of the First Court of Appeals by Republican Governor Rick Perry in December 2002. She was originally appointed to the Court in 2001 as a justice by the same Republican Governor Rick Perry. See this Court's URL: http://www.txcourts.gov/1stcoa/about-the-court/justices/chief-justice-sherry-radack.aspx. That is not the normal way the average Texan like Diogu gets to become a justice of a Court of Appeal much more a Chief judge of that Court.

On 11/21/2014**,** the Diogu filed **a** Motion to abate this appeal because of circumstances beyond his control. See the record under this Cause for the given date attached herein by reference. And on 11/25/2014, Judge Radack *sarcastically*

---

[4] The phrase dates back to the signing of the Magna Carta in England. At that point, the provision ensured that members of the nobility were tried by a jury comprised of fellow nobles, rather than being judged by the king. Now, however, "a jury of peers" more accurately means "a jury of fellow citizens." – See http://criminal.findlaw.com/criminal-procedure/what-is-a-jury-of-peers.html#sthash.7bYiHpKr.dpuf

[5] Justice Radack position in life clearly does not represent the classical definition of the jury of your peers, or the average Justice to the First Court of appeal or even that of the Ordinary Texas Texan who seeks such an office.

granted the motion in part but expressly barred the Appellant from filing a court reporter's record within the 60-day extension window that she granted the Appellant to file his opening brief. ***See this court's record under this Cause on the given date attached herein by reference***.

In her Order Judge Radack[6] extended time for Diogu to file his appellant brief to 60 days but barred Diogu from obtaining the reporter's record[7] even though both could have been accomplished within the 60 day extension of time.

She did so knowing that the lack of such record will gravely deprive the Appellant's right to properly prosecute his appeal and deny him the benefit of the three judge panel. Further, she should have deferred that motion to a three Judge panel as any reasonable judge under the circumstance would.

Further, her decision was devoid of the premise of our justice system are (1). Trust (2). Justice and (3) rudimental fairness. Further the danger in her decision was that she knew that it will gravely affect the outcome of the appeal but she did not *give a damn*. In doing so, she deprived Diogu of his protected liberty interest in his property without consequence.

---

[6] Diogu is Rocket Scientist born in Cameroon, in West Central Africa, and grew up in many parts of the third world countries and Britain. He has witnessed the destructive effect on society and the judiciary when judges act like they above the law and show disdain to the public they agreed to serve.

[7] She ruled that the Court will consider and decide those issues or points that do not require a reporter's record for a decision.

In this case when she opened the window for Diogu to file Appellant's brief in 60 days but denied him the right to file reporter's record at least within 30 of the 60 days she granted him. She extended time for Diogu to file his appellate brief on one hand and barred Diogu from benefiting from the 60 day extension on the other hand. Unfortunately, the 60 days extension of time was meaningless gesture.

In so doing the three judge panel were deprived from reaching a decision on the merit on at least 2 of Diogu's points of errors on appeal.

## SUMMARY OF THE ARGUMENT

In holding that the voluntary lifting of notice of Lis Pendens does not render those claims for monetary damages moot, the Panel made three (3) errors.

*First* it ignored the Appellee's live pleading filed nine (9) days after the Lis Pendens was expunged[8]/removed/lifted from the Fort Bend County Real Estate Record. Further, content of the Appellee's request for declaratory judgment requested Court Order to remove the Lis Pendens from the property records which showed that the Appellee believed that the Appellant's Notice of Lis Pendens was still pending in the Fort Bend County Real Deeds Record when she sought her monetary damages. Therefore this case should have been dismissed based on judicial admission. This can occur in one of two ways for example: (1) pleading

---

[8] *verb (Formal)* <u>erase</u>, <u>remove</u>, <u>destroy</u>, <u>abolish</u>, <u>cancel</u>, <u>get rid of</u>, <u>wipe out</u>, <u>eradicate</u>, <u>excise</u>, <u>delete</u>, <u>extinguish</u>, <u>strike out</u>, <u>obliterate</u>, <u>annihilate</u>, <u>efface</u>, <u>exterminate</u>, <u>annul</u>, <u>raze</u>, <u>blot out</u>, <u>extirpate</u>, The Free Dictionary /Thesaurus by Farlex. URL: http://www.thefreedictionary.com/expunge

an affirmative relief which is not recognized under Texas law, or (2) or pleading a relief that does not exist at all. In this case Appellee pleaded affirmative relief that did not exist – monetary damages and declaratory judgment in that the relief they sought was null due a nonexistent Lis Pendens in the property records of Fort Bend County. In either situation, a movant may support its motion for summary judgment on the non-movant's pleadings alone. *Helena Lab. Corp. v. Snyder*, 886 S.W.2d 767 (Tex. 1994). See also, *Galvan v. Public Utilities Bd.,* 778 S.W.2d 580 (Tex. App. — Corpus Christi 1989) (defendant's pleadings stating it was "an agency of the City of Brownsville, Texas" held sufficient proof to support plaintiff's summary judgment on the issue of agency).

*Second,* the Court disregarded the rule of construction governing the mootness doctrine which state - Neither the Texas Constitution nor the Texas Legislature has vested the Court with the authority to render advisory opinions. See Tex. Const. art. II, _ I; see also Camarena v. Tex. Employment Comm'n, 754 S.W.2d 149, 151 (Tex. 1988). The mootness doctrine limits courts to deciding cases in which an actual controversy exists between the parties. See, *Fed. Deposit Ins. Corp. v. Nueces County*, 886 S.W.2d 766, 767 (Tex. 1994).

**Third** the Court erred in the application of the nonsuit rule Tex. R. Civ. P. 162 to resolve this case. Nonsuit Rule states that a plaintiff has an absolute right to take a nonsuit so long as the defendant has not made a claim for affirmative

12

relief.  Tex. R.  Civ.  P. 162; BHP Petroleum Co. Inc. v. Millard, 800 S.W.2d 838, 840–41 (Tex. 1990).

Clearly nonsuit analysis is not applicable in this case because filing and lifting a Lis Pendens all occurred at the county Recording Office before the Appellee first filed her damage in Court as such it occurred before the Court acquired jurisdiction over the subject matter, while filing and nonsuting a case occur within the Court system, as such the Court would have acquired Jurisdiction of both before the case is nonsuited.  A case of ***Apple and Orange comparison.***

Also, if the Appellant filed and lifted the Lis Pendens, after the Appellee/defendant has filed a lawsuit seeking an affirmative relief the case will not be moot. But that was not what happened here.

**Finally**, as general rule it well established that in Texas a decision to affirm a lower court's ruling in the Texas Court of appeal is by a three judge panel[9]. See URL: https://en.wikipedia.org/wiki/Texas_Courts_of_Appeals, citing the first Court of Appeal of Texas. In this case Justice Radack obstructed Justice when barred Diogu from obtaining and using the reporter's record in his brief. The

---

[9] The **Texas Courts of Appeals** are part of the Texas judicial system. In Texas, all cases appealed from the district level, both criminal and civil, may be heard by one of the fourteen Texas Courts of Appeals. ….The total number of appellate justices in Texas is currently 80, and can range from three to thirteen for each court. Cases in appellate courts are usually heard by a panel of three judges (even if there are more available). The exception to this is when a case is heard *en banc*, when all of the justices hear the case.

13

reporter's record would have shown that Diogu objected to the Bench trial for lack of Notice and that he had not waived his right to jury trial.

Because of Judge Radack's conduct Diogu proceeded on his appeal without the reporter's record. The effect of that decision is evident on the outcome of this appeal. In essence Diogu's appeal was decided a by a three judge panel of One, Judge Radack, in violation of Texas Rules of Appellate procedure.

## ARGUMENT

### THE PANEL'S ANALYSIS OF THE MOOTNESS DOCTRINE IGNORES THE FACT AND MISSTATES THE LAW

The Panel's approach to the mootness doctrine is flawed in three (3) aspects.

### 1. JUDICIAL ADMISSION MADE BY THE APPELLEE IN HER LIVE PLEADING COMPELS THE COURT TO REHEAR, REVERSE AND REMAND THE CASE TO THE LOWER COURT FOR DISMISSAL AS MOOT

*FIRST* the panel ignored a powerful evidence – Appellee's own live pleading –"seeking an order to remove the Lis Pendens from the property records" when there was no Lis Pendens in the Property record of Fort Bend County as such she sought nonexistent affirmative relief.

The Appellee's clear, deliberate, and/or unequivocal statement contained in her live pleading constitutes a judicial admission that she filed her pleading believing that the Appellant had not lifted and/or expunged his Lis Pendens at the time she sought monetary damages. The fact that the Appellee made this judicial admission closes the door on the argument that the Appellee was seeking monetary

14

damages against the Appellant for filing and/or lifting the Lis Pendens before she filed her counterclaims as the panel in this case analyzed.

It is well established that a judicial admission may be made in live pleadings and judicial admission may also be made in a response to a motion or counter-claim. See Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 905 (Tex. 2000) (a judicial admission may be made in live pleadings); Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 568 (Tex. 2001) (a judicial admission may also be made in a response to a motion or counter-motion). The judicial admission, however, must be clear and unequivocal. See Holy Cross Church of God in Christ, 44 S.W.3d at 568, which was the case here. A judicially admitted fact is established as a matter of law, and the admitting party may not dispute it or introduce evidence contrary to it. Bowen v. Robinson, 227 S.W.3 86, 92 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). This rule is based on the public policy that it would be absurd and manifestly unjust to permit a party to recover after he has sworn himself out of court by a clear and unequivocal statement. Id.

It is clear as a matter of law that Appellee sought an affirmative relief that was not available to her because it did not exist at the time she requested it. See also, *Helena Lab. Corp. v. Snyder*, 886 S.W.2d 767 (Tex. 1994).

As such the Panel should rehear this case and reverse the lower court's judgment in its entirety because the Appellees case was solely based on a pending

Lis Pendens

## 2. WHEN THE MOOTNESS DOCTRINE DISPOSES OF THE DISPUTE THAT SPURRED THE LAWSUIT, BEFORE THE CASE GOES TO COURT, THERE IS NO CASE OR CONTROVERSY AND THE CASE MUST BE DISMSSIED AS MOOT AND DAMAGE CLAIMS WILL NOT BREATH LIVE TO IT

*SECOND,* the Panel's approach to mootness in this case was flawed because it disregarded the rules governing the mootness doctrine. It must be remembered that the time of bringing the complaint or intervening circumstances as it relates to the dispute that spurred the lawsuit plays a criterial role *in* the mootness doctrine. As a result of mootness the movant can be deprived of a "personal stake in the outcome of the lawsuit," at any point during litigation and when that happens the action can no longer proceed and must be dismissed as moot. *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477-478, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)

### APPLICABLE TEXAS AND FEDERAL LAWS ON THE MOOTNESS DOCTRINE ARE IDENTICAL AND ANOLOGOUS BUT US SUPREME COURT CASES ARE MORE INSTRUCTIVE FOR THIS ANALYSIS

It is well established that neither the Texas Constitution nor the Texas Legislature has vested this Court with the authority to render advisory opinions. See Tex. Const. art. II, _ I; Camarena v. Tex. Employment Comm'n, 754 S.W.2d 149, 151 (Tex. 1988). See also, *Heckman v. Williamson Cnty*., 369 S.W.3d 137, 162 (Tex. 2012). No justiciable controversy exists if the issues/dispute that spurred

16

the lawsuit are no longer "live" or if the parties lack a legally cognizable interest in the outcome. *Heckman*, 369 S.W.3d at 162.

The mootness doctrine limits courts to deciding cases in which an actual controversy exists." F.D.I.C. v. Nueces County, 886 S.W.2d 766, 767 (Tex.1994) (citing Camarena v. Tex. Employment Comm'n, 754 S.W.2d 149, 151 (Tex.1988)). A controversy "must exist between the parties at every stage of the legal proceedings, including the appeal." Williams v. Lara, 52 S.W.3d 171, 184 (Tex.2001). The Texas Supreme Court has "recognized two exceptions to the mootness doctrine: (1) the 'capable of repetition' exception and (2) the 'collateral consequences' exception." Nueces County, 886 S.W.2d at 767.

The Tex. Const. art. II, _ I and *U. S. Const., Art. III, §2 are essentially identical or* analogous so the U. S. Supreme Court case laws interpreting *U. S. Const., Art. III, §2*) are instructive in this case. The US Supreme Court review in *Alvarez V. Smith,* **558 U.S. 87, 93, 130 S.CT. 576, 175 L.ED.2D 447 (2009)) and** *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 569 U.S., 185 L. Ed. 2d 636 (2013) are eerily identical and analogues and are applicable to the Diogu case.

**#1. *ALVAREZ V. SMITH,* 558 U.S. 87, 93, 130 S.CT. 576, 175 L.ED.2D 447 (2009))**

In *Alvarez v. Smith,* 558 U.S. 87, 93, 130 S.Ct. 576, 175 L.Ed.2d 447 (2009)), the US Supreme granted certiorari in this case to determine whether Illinois law provides a sufficiently speedy opportunity for an individual, whose car

17

or cash police have seized without a warrant, to contest the lawfulness of the seizure. Citing U. S. Const., Amdt. 14, §1; United States v. Von Neumann, 474 U. S. 242 (1986); United States v. $8,850, 461 U. S. 555 (1983). At the time of oral argument, however, The Supreme Court learned that the underlying property disputes have all ended. The State has returned all the cars that it seized, and the individual property owners have either forfeited any relevant cash or have accepted as final the State's return of some of it. The Supreme Court consequently found the case moot, and the Court therefore vacated the judgment of the Court of Appeals and remand the case to that court with instructions to dismiss. Citing, *United States v. Munsingwear, Inc.*, 340 U. S. 36, 39 (1950).

In *Alvarez*, the defendants moved to dismiss the complaint on the ground that Seventh Circuit precedent made clear that "the Constitution does not require any procedure prior to the actual forfeiture proceeding." Citing Jones v. Takaki, 38 F. 3d 321, 324 (1994) (citing Von Neumann, supra, at 249). On February 22, 2007, the District Court granted the motion to dismiss. It also denied the plaintiffs' motion for class certification. The plaintiffs appealed.

On May 2, 2008, the Seventh Circuit decided the appeal in the plaintiffs' favor. Smith v. Chicago, 524 F. 3d 834. It reconsidered and departed from its earlier precedent. *Id.,* at 836-839. It held that "the procedures set out in" the Illinois statute "show insufficient concern for the due process right of the

plaintiffs." *Id.,* at 838. And it added that, "given the length of time which can result between the seizure of property and the opportunity for an owner to contest the seizure under" Illinois law, "some sort of mechanism to test the validity of the retention of the property is required." *Ibid.* The Court of Appeals reversed the judgment of the District Court and remanded the case for further proceedings. *Id.,* at 839. Its mandate issued about seven weeks thereafter.

On February 23, 2009, we granted certiorari to review the Seventh Circuit's "due process" determination. The Court of Appeals then recalled its mandate. The parties filed briefs in this Court. We then recognized that the case might be moot, and we asked the parties to address the question of mootness at the forthcoming oral argument.

At oral argument counsel for both sides confirmed that there was **no** longer any dispute about ownership or possession of the relevant property. See Tr. of Oral Arg. 5 (State's Attorney); *id.,* at 56-57 (plaintiffs). The State had returned the cars to plaintiffs Smith, Perez, and Brunston. See *id.,* at 5. Two of the plaintiffs had "defaulted," apparently conceding that the State could keep the cash. *Ibid.* And the final plaintiff and the State's Attorney agreed that the plaintiff could keep some, but not all, of the cash at issue. *Id.,* at 5, 56-57. As counsel for the State's Attorney told the Court, "[T]hose cases are over." *Id.,* at 5

The Alvarez Court reason that the Constitution permits this Court to decide

legal questions only in the context of actual "Cases" or "Controversies." U. S. Const., Art. III, §2. An "`actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" Citing*,* **Preiser v. Newkirk, 422 U. S. 395, 401 (1975)** *(quoting* **Steffel v. Thompson, 415 U. S. 452, 459, n. 10 (1974)***).* In unanimous decision the Alvarez court held that there is <mark>no</mark> longer any actual controversy between the parties about ownership or possession of the underlying property.

The State's Attorney argues that there is a continuing controversy over damages. The Supreme Court conceded that the plaintiffs filed a motion in the District Court seeking damages. But the plaintiffs filed their motion after the Seventh Circuit issued its opinion. ***And, after the Supreme Court granted certiorari, the Court of Appeals recalled its mandate, taking the case away from the District Court before the District Court could respond to the motion. Thus, we have before us a complaint that seeks only declaratory and injunctive relief, not damage.*** *Alvarez v. Smith,* 558 U.S. 87, 93, 130 S.Ct. 576, 175 L.Ed.2d 447 (2009))

*IN ALVAREZ V. SMITH,* **558 U.S. 87, 93, 130 S.CT. 576, 175 L.ED.2D 447 (2009)) AS SHOWN VERBATIM FROM "#1" ABOVE,,** <mark>the US Supreme Court Held that no</mark> matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the

dispute "is **no** longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Alvarez, supra,* at 93, 130 S.Ct. 576.

**Simply put, Ms. Aporn could not invoke the trial Court's jurisdiction, because the dispute (Lis Pendens) that spurred the lawsuit was moot before she could file her affirmative relief in the Court.**

**THEREFORE, THE PANEL ERRED IN HOLDING THAT VOLUNTARY LIFTING OF NOTICE OF LIS PENDENS BEFORE MS. APRON COULD EVEN INVOKE THE TRIAL COURT'S JURISDICTION DOES NOT RENDER THOSE CLAIMS FOR MONETARY DAMAGES MOOT**

### *#2. GENESIS HEALTHCARE CORP. V. SYMCZYK*, 133 S. CT. 1523, 569 U.S., 185 L. ED. 2D 636 (2013)

*In Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 569 U.S., 185 L. Ed. 2d 636 (2013) the US Supreme Court reviewed the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq.,* which provides that an employee may bring an action to recover damages for specified violations of the Act on behalf of himself and other "similarly situated" employees. The Court granted certiorari to resolve whether such a case is justiciable when the lone plaintiff's individual claim becomes moot. 567 U.S. ___, 133 S.Ct. 26, 183 L.Ed.2d 674 (2012). And held that it is not justiciable. In reaching the question on which the Court granted certiorari, the Court concluded that respondent has no personal interest in representing

putative, unnamed claimants, nor any other continuing interest that would preserve her suit from mootness. And Held that the suit was, therefore, appropriately dismissed for lack of subject-matter jurisdiction. The judgment of the Court of Appeals for the Third Circuit is reversed.

The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract. Section 16(b) of the FLSA, 52 Stat. 1060, as amended, 29 U.S.C. § 216(b), gives employees the right to bring a private cause of action on their own behalf and on behalf of "other employees similarly situated" for specified violations of the FLSA. A suit brought on behalf of other employees is known as a "collective action." See *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 169-170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

In 2009, respondent, who was formerly employed by petitioners as a registered nurse at Pennypack Center in Philadelphia, Pennsylvania, filed a complaint on behalf of herself and "all other persons similarly situated." App. 115-116. Respondent alleged that petitioners violated the FLSA by automatically deducting 30 minutes of time worked per shift for meal breaks for certain employees, even when the employees performed compensable work during those breaks. Respondent, who remained the sole plaintiff throughout these proceedings, sought statutory damages for the alleged violations.

When petitioners answered the complaint, they simultaneously served upon respondent an offer of judgment under Federal Rule of Civil Procedure 68. The offer included $7,500 for alleged unpaid wages, in addition to "such reasonable attorneys' fees, costs, and expenses ... as the Court may determine." *Id.,* at 77. Petitioners stipulated that if respondent did not accept the offer within 10 days after service, the offer would be deemed withdrawn.

After respondent failed to respond in the allotted time period, petitioners filed a motion to dismiss for lack of subject-matter jurisdiction. Petitioners argued that because they offered respondent complete relief on her individual damages claim, she no longer possessed a personal stake in the outcome of the suit, rendering the action moot. Respondent objected, arguing that petitioners were inappropriately attempting to "pick off" the named plaintiff before the collective-action process could unfold. *Id.,* at 91.

The District Court found that it was undisputed that no other individuals had joined respondent's suit and that the Rule 68 offer of judgment fully satisfied her individual claim. It concluded that petitioners' Rule 68 offer of judgment mooted respondent's suit, which it dismissed for lack of subject-matter jurisdiction.

The Court of Appeals reversed. 656 F.3d 189 (C.A.3 2011). The court agreed that no other potential plaintiff had opted into the suit, that petitioners' offer fully satisfied respondent's individual claim, and that, under its precedents,

23

whether or not such an offer is accepted, it generally moots a plaintiff's claim. *Id.,* at 195. But the court nevertheless held that respondent's collective action was not moot. It explained that calculated attempts by some defendants to "pick off" named plaintiffs with strategic Rule 68 offers before certification could short circuit the process, and, thereby, frustrate the goals of collective actions. *Id.,* at 196-198. The court determined that the case must be remanded in order to allow respondent to seek "conditional certification"[11] in the District Court. If respondent were successful, the District Court was to relate the certification motion back to the date on which respondent filed her complaint. *Ibid*

Article III, § 2, of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies," which restricts the authority of federal courts to resolving "`the legal rights of litigants in actual controversies,'" *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (quoting *Liverpool, New York & Philadelphia S.S. Co. v. Commissioners of Emigration,* 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899 (1885)). In order to invoke federal-court jurisdiction, a plaintiff must demonstrate that he possesses a legally cognizable interest, or "`personal stake,'" in the outcome of the action. See <u>Camreta v. Greene, 563 U.S. ___, ___, 131 S.Ct. 2020, 2028, 179 L.Ed.2d 1118 (2011)</u> (quoting <u>Summers v. Earth Island Institute, 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009)</u>).

The This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved.

A corollary to this case-or-controversy requirement is that "`an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Official English v. Arizona,* 520 U.S. 43, 67, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (quoting *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975)). If an intervening circumstance deprives the plaintiff of a "personal stake in the outcome of the lawsuit," at any point during litigation, the action can no longer proceed and must be dismissed as moot. *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477-478, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) (internal quotation marks omitted).

In the proceedings below, both courts concluded that petitioners' Rule 68 offer afforded respondent complete relief on — and thus mooted — her FLSA claim. See 656 F.3d, at 201; No. 09-5782, 2010 WL 2038676, *4 (E.D.Pa., May 19, 2010). Respondent now contends that these rulings were erroneous, because petitioners' Rule 68 offer lapsed without entry of judgment. Brief for Respondent 12-16. The United States, as *amicus curiae,* similarly urges the Court to hold that petitioners' unaccepted offer did not moot her FLSA claim and to affirm the Court of Appeals on this basis. Brief for United States 10-15.

While the Courts of Appeals disagree whether an unaccepted offer that fully satisfies a plaintiff's claim is sufficient to render the claim moot,[3] we do not reach this question, or resolve the split, because the issue is not properly before us. The Third Circuit clearly held in this case that respondent's individual claim was moot. 656 F.3d, at 201. Acceptance of respondent's argument to the contrary now would alter the Court of Appeals' judgment, which is impermissible in the absence of a cross-petition from respondent. See *Northwest Airlines, Inc. v. County of Kent,* 510 U.S. 355, 364, 114 S.Ct. 855, 127 L.Ed.2d 183 (1994); *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 119, n. 14, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). Moreover, even if the cross-petition rule did not apply, respondent's waiver of the issue would still prevent us from reaching it. In the District Court, respondent conceded that "[a]n offer of complete relief will generally moot the [plaintiff's] claim, as at that point the plaintiff retains no personal interest in the outcome of the litigation." App. 93; 2010 WL 2038676, at *4. Respondent made a similar concession in her brief to the Court of Appeals, see App. 193, and failed to raise the argument in her brief in opposition to the petition for certiorari. We, therefore, assume, without deciding, that petitioners' Rule 68 offer mooted respondent's individual claim. See *Baldwin v. Reese,* 541 U.S. 27, 34, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004).

We turn, then, to the question whether respondent's action remained

justiciable based on the collective-action allegations in her complaint. A straightforward application of well-settled mootness principles compels our answer. In the absence of any claimant's opting in, respondent's suit became moot when her individual claim became moot, because she lacked any personal interest in representing others in this action. While the FLSA authorizes an aggrieved employee to bring an action on behalf of himself and "other employees similarly situated," 29 U.S.C. § 216(b), the mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied.

In order to avoid this outcome, respondent relies almost entirely upon cases that arose in the context of Federal Rule of Civil Procedure 23 class actions, particularly *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Deposit Guaranty Nat. Bank v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980); and *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). But these cases are inapposite, both because Rule 23 actions are fundamentally different from collective actions under the FLSA, see *Hoffmann-La Roche Inc.,* 493 U.S., at 177-178, 110 S.Ct. 482 (SCALIA, J., dissenting), and because these cases are, by their own terms, inapplicable to these facts. It follows that this action was appropriately dismissed as moot.

Respondent contends that she has a sufficient personal stake in this case

based on a statutorily created collective-action interest in representing other similarly situated employees under § 216(b). Brief for Respondent 47-48. In support of her argument, respondent cites our decision in *Geraghty,* which in turn has its roots in *Sosna.* Neither case supports her position.

In *Sosna,* the Court held that a class action is not rendered moot when the named plaintiff's individual claim becomes moot *after* the class has been duly certified. 419 U.S., at 399, 95 S.Ct. 553. The Court reasoned that when a district court certifies a class, "the class of unnamed persons described in the certification acquire[s] a legal status separate from the interest asserted by [the named plaintiff]," with the result that a live controversy may continue to exist, even after the claim of the named plaintiff becomes moot. *Id.,* at 399-402, 95 S.Ct. 553. *Geraghty* narrowly extended this principle to *denials* of class certification motions. The Court held that where an action would have acquired the independent legal status described in *Sosna* but for the district court's erroneous denial of class certification, a corrected ruling on appeal "relates back" to the time of the erroneous denial of the certification motion. 445 U.S., at 404, and n. 11, 100 S.Ct. 1202.

*The US Supreme court stated that Geraghty* is inapposite, because the Court explicitly limited its holding to cases in which the named plaintiff's claim remains live at the time the district court denies class certification. See *id.,* at 407, n. 11,

28

100 S.Ct. 1202. Here, respondent had not yet moved for "conditional certification" when her claim became moot, nor had the District Court anticipatorily ruled on any such request. Her claim instead became moot prior to these events, foreclosing any recourse to *Geraghty.* There is simply no certification decision to which respondent's claim could have related back.

More fundamentally, essential to our decisions in *Sosna* and *Geraghty* was the fact that a putative class acquires an independent legal status once it is certified under Rule 23. Under the FLSA, by contrast, "conditional certification" does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees, see *Hoffmann-La Roche Inc., supra,* at 171-172, 110 S.Ct. 482, who in turn become parties to a collective action only by filing written consent with the court, § 216(b). So even if respondent were to secure a conditional certification ruling on remand, nothing in that ruling would preserve her suit from mootness.

*IN GENESIS HEALTHCARE CORP. V. SYMCZYK*, 133 S. CT. 1523, 569 U.S., 185 L. ED. 2D 636 (2013), AS SHOWN VERBATIM FROM "#2" ABOVE**,** the U. S. Supreme Court held essentially that her FLSA claim which is identical to the TEX. CIV. PRAC. & REM. CODE § 12.002 could not save the case from becoming moot as such this panel erred by holding that the Aporn case was not

moot.;

## 3. THE PANEL'S NONSUIT ANALYSIS AS IN *UNITED STATES PAROLE COMM'N V. GERAGHTY,* 445 U.S. 388, 100 S.CT. 1202, 63 L.ED.2D 479 (1980) IS FLAWED BECAUSE THE ANALYSIS AND THE CASE RELIED ON ARE INAPPOSITE

**Third** the Court erred in the application of the nonsuit rule Tex. R. Civ. P. 162. Nonsuit Rule states that a plaintiff has an absolute right to take a nonsuit so long as the defendant has not made a claim for affirmative relief. Tex. R. Civ. P. 162; BHP Petroleum Co. Inc. v. Millard, 800 S.W.2d 838, 840–41 (Tex. 1990)

In order to avoid this the above outcome, the Panel relies almost entirely upon a case that arose in the context based on the Texas Citizen's Participation Act (TCPA) which provides that court "shall" award to moving party costs, attorney's fees, and other expenses as justice may require, and sanctions sufficient to deter the bringing of similar legal actions). Particularly interesting in both the nonsuit rule and TCPA both involved bringing a legal action first and then latter voluntarily dismissing them. Another interesting caveat is that with the nonsuit rule, one can bring a legal action and voluntarily dismiss it without consequence if at the time he dismissed the defendant had made a affirmative claim of relief. As a point of interest, all the activities the Court relied on occurred in the Courts – Judicial branch. But the Diogu's conduct of filing and lifting the Lis Pended occurred in the executive branch.

30

The panel's reliance in *James v. Calkins*, 446 S.W.3d 135, 144 (Tex. App.—Houston [1st Dist.] 2014, pet. filed) (plaintiff's voluntary nonsuit did not moot defendant's claims for costs, fees, and sanctions) was inapposite TCPA claim remains live at the time at the time it was nonsuited. *As in Geraghty* was inapposite, because the Court explicitly limited its holding to cases in which the named plaintiff's claim remains live at the time the district court denies class certification. See *id.,* at 407, n. 11, 100 S.Ct. 1202

In Diogu v. Aporn, the Court's Jurisdiction could not be invoked in the first place and as such the controversy was not even live when Diogu lifted his Lis Pendens at the Fort Bend County Recording Office.

Lis Pendens provides a mechanism for putting the public on notice of certain categories of litigation involving real property." *Prappas v. Meyerland Cmty. Improvement Ass'n,* 795 S.W.2d 794, 795 (Tex. App.-Houston [14th Dist.] 1990, writ denied); *see also In re Miller,* 433 S.W.3d 82, 84 (Tex. App.-Houston [1st Dist.] 2014, orig. proceeding) ("A Lis Pendens is a notice of litigation, placed in the real property records, asserting an interest in the property, and notifying third parties that ownership of the property is disputed.")

Once a Lis Pendens has been filed, the statute provides two routes for removal of the Lis Pendens from the County Real Property Record: (a) expunction, pursuant to section 12.0071 of the Property Code; and, (b) cancellation, pursuant to

section 12.008 of the Property Code As a result, "courts have given a broad reading to § 12.008, so as to grant an effective remedy." *See Prappas v. Meyerland Cmty. Improvement Ass'n*, 795 S.W.2d 794, 798 (Tex. App.–Houston [14th Dist.] 1990, writ denied). Once any of those two provision once exercised it operates as no Lis Pendens was filed ab initio.

**JUSTICE RADACK'S CONDUCT CAUSED THE THREE JUDGE PANEL TO AFFIRM THE LOWER COURT'S JUDGMENT WHEN THEY OVERRULED DIOGU'S LACK OF NOTICE AND THE TRIAL COURT'S DENIAL OF HIS RIGHT TO A JURY TRIAL ISSUES BECAUSE OF A LACK OF REPORTER'S RECORD**

The three judge panel in this case failed to reach decisions on the merit on at least two (2) of Diogu's issues on appeal because of the obstruction caused by Judge Radack. In essence those non decisions were made by *a three judge panel of one – Judge Radack* in violation of the law. Because of this alone the case must be reheard, remanded for the reporter's record to be provided and briefed.

It is well established that appeals in Texas are normally decided by panels of three judges working together. Additionally, judges do not participate in cases in which their participation would constitute a conflict of interest or create an appearance of impropriety. In such circumstances, the judge should recuse himself or herself from the case.

It is also well established that even through a motion judge can rule on a pending matter on appeal but if such ruling will affect the outcome of the Appeal itself he/she will refer that issue to the full Court or a three judge panel for a decision.

That is not what happened here. In this Case, Judge Radack single handed decided this appeal when she barred the appellant from using the reporter's record to prosecute his appeal and then the judge participated in the panel of three judges that overruled two of Diogu's issues because of the unavailability of the reporter's record that Judge Radack barred.. Go figure.

Judge Radack[10]'s conduct here is analogous with the description of Lewis "Scooter" Libby's conduct before the federal grand jury, in that case by the famed Federal Prosecutor, Patrick Fitzgerald in the obstruction of justice case against Lewis "Scooter" Libby, Fitzgerald, stated that **"what we have when someone charges obstruction of justice, *the umpire gets sand thrown in his eyes*. He's trying to figure what happened and somebody blocked their view. So what you were saying is the harm in an obstruction investigation *is it prevents us from making the fine judgments we want to make*"**. See the Plame Investigation, (Washingpost, Friday, October 28, 2005; 3:57 PM)

---

[10] Diogu is not accusing the Chief Justice of committing a crime, but that she unlawfully deprived him of his liberty interest in his property by obstructing the three judge panel from deciding his case on the merit without due process..

In this case the three judge panel (the umpires) overruled Diogu Issues on the ***Lack Of Notice Of Trial Setting and Denial Of Right To A Jury Trial*** because of the sand thrown in their eyes by Justice Radack in her adverse ruling barring Diogu from using the Court Reporter's record in the appeal. Her ruling which should have been made by a three judge panel, prevented this three Judge panel from making the fine judgments they would have made.

Therefore, but for the Sand that was thrown in their eyes by Judge Radack, they would reversed and remanded the case. Because of Judge Radack's conduct Diogu proceeded on his appeal without the reporter's record. The effect of that decision is evident on the outcome of this appeal.

In essence Diogu's appeal was decided a by ***a three judge panel of One, Judge Radack***, in violation of Texas Rules of Appellate procedure and Texas Constitution to the extent that it implicates the jury of one's peer doctrine.

## CONCLUSION AND PRAYER

As shown above, Aporn's counterclaims included: (1) claim for wrongful filing of a notice of Lis Pendens on Aporn's homestead property, *see* TEX. CIV. PRAC. & REM. CODE § 12.002, seeking statutory damages in the form of actual damages, court costs, attorneys' fees and exemplary damages, (2) claim for intentional infliction of emotional distress, caused by Diogu's "intentional and/or reckless conduct including . . . knowingly making and publishing false accusations

that Ms. Aporn engaged in criminal activity . . . and falsely filed official public documents without legal basis or justification encumbering Ms. Aporn's homestead property," (3) request for declaratory judgment that filing of notice of Lis Pendens was improper, and an order to remove the Lis Pendens from the property records, and (3) request for sanctions and attorneys' fees pursuant to section 10.002 of the Texas Civil Practice and Remedies Code and Rule 13 of the Texas Rules of Civil Procedure should be dismissed as moot.

Also, the three judge panel decision to affirm the lower court's judgment included the lack of availability of the Reporter's Record which was caused by Justice Radack not referring the case to full court or the three judge panel. As a result the three Judge panel from making the fine judgments they wanted to make.

For the reasons set forth herein, Appellant prays this case be reheard, considered En Banc reversed and remanded for a new trial; or in the alternative, reversed and remanded for a dismissal with Prejudice and for such other relief as he may show himself deserving at law or in equity.

Respectfully submitted,

By: __/S/Diogu Kalu Diogu ii_
Diogu Kalu Diogu II, LL.M.
State Bar No. 24000340
P. O. Box 994, Fulshear, Texas 77441
Telephone (713) 791 3225
Telecopier (832) 408 7611

**CERTIFICATE OF SERVICE**

I, Diogu Kalu Diogu II, LL.M, attorney for the Appellant, do hereby certify that a true and correct copy of the above and foregoing motion for rehearing has been delivered to the following parties: Deposited in first class U.S. mail addressed to:

Mario Martinez
Law Offices of Mario A Martinez PLLC,
23123 Cinco Ranch Blvd #208,
Katy TX 77494

September 22nd, 2015

By: _/S/Diogu Kalu Diogu ii_
Diogu Kalu Diogu II, LL.M.
State Bar No. 24000340
P. O. Box 994, Fulshear, Texas 77441
Telephone (713) 791 3225
Telecopier (832) 408 7611